Ingrid STARR

v.

The UNITED STATES of America

v.

Howard Clifford ZIELKE et al.

No. CA 3–7519–C.

United States District Court,
N. D. Texas,
Dallas Division.
April 25, 1975.

John H. McElhaney, Turner, Rodgers, Sailers, Jordan & Calloway, Jack Johannes, Johannes, Robertson & Wilkinson, Dallas, Tex., for plaintiff.

Frank D. McCown, U. S. Atty., Kenneth J. Mighell, Asst. U. S. Atty., Dallas, Tex., for U. S.

Eugene Jericho, Strasburger, Price, Kelton, Martin & Unis, Dallas, Tex., for Zielke and Thomson.

T. Alex Eastus & Lois Bacon, Asst. City Attys., Dallas, Tex., for city of Dallas.

## OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

The unfortunate sequence of events which resulted in this lawsuit occurred on January 20, 1972. Juan Villaba, the 14-year old son of the plaintiff, and his brother Gustavo were riding their Honda motorcycle,[1] which the brothers had recently received as a Christmas gift. Neither of the brothers was licensed to operate the motorcycle on the public streets and highways and their parents had restricted their motorcycle riding to the premises of their apartment complex. The brothers lived with their mother and stepfather in an apartment complex, which was to the east of Hampton Avenue in the Oak Cliff section of Dallas. Juan and Gustavo were approached by two friends who offered to direct them to a motorcycle path, which was to the west of Hampton Avenue. The brothers were anxious to test their riding skills upon the path, about which they had heard much. Juan telephoned his mother, who was still at work, to advise her that the boys were going to ride their motorcycle. The plaintiff gave her permission without any inquiry as to where this riding would be done.

The motorcycle path, which the Villaba brothers were directed to, was on the premises of Redbird Airport. The other boys left, and Juan and Gustavo took turns riding the Honda. Gustavo waited at a point to the east of the airport's runway 17 while his brother took his tragic ride.

Redbird Airport is a municipal airport owned by the City of Dallas, Texas, Juan and Gustavo were both aware of the airport as they had been on the premises on other occasions. There were numerous "no-trespassing" signs posted at the entrance and at various points on the extremities of the airport.

In the meantime third-party defendants Howard Zielke and Richard Thomson had just finished installing a new battery in their Cessna 172. Zielke and Thomson were joint owners of the aircraft, which they maintained at Redbird Airport. They decided to charge the battery by flying the Cessna. Zielke and Thomson received clearance from the tower controller and proceeded to take off on runway 17 to the south. By this time it was early evening and totally dark. Zielke was piloting the aircraft in the left seat and Thomson was seated to his right. The plane climbed from the takeoff and turned left toward the east and thereafter made another left turn into the airport's regular traffic pattern to the north.

Just before turning to the left from this downwind leg of the traffic pattern to a westerly direction on the base leg, Zielke and Thomson noticed a reflection of a light on the ground somewhere in the vicinity of the north end of runway 17. The reflected light appeared to be moving slowly away from the runway area so the aviators quickly dismissed it from their attention.

After turning west onto the base leg, pilot Zielke set up his procedures for landing the aircraft. He was preparing to "land on the numbers". This type of precision landing requires touching down the airplane on the number "17" immediately adjacent to the north end threshold of runway 17.

After turning left to the south for the approach leg of the flight, the pilot

---

1. Model SL 100.

Zielke started the aircraft's descent. Approximately 161 feet from the threshold end of runway 17, Thomson saw a light intercepting the airplane's path from the right. Before either aviator could react, they heard a noise caused by the impact of Juan Villaba colliding with the aircraft. The boy was killed immediately.

The plaintiff brought this action against the United States under the Federal Tort Claims Act.[2] The plaintiff's cause of action against the government is founded upon two theories of liability. She first contends that the government was specifically negligent in that Redbird control tower, which was manned and operated by the Federal Aviation Administration (F.A.A.), failed to warn the landing aircraft of the motorcyclist's presence on the airport's runway. Secondly, the plaintiff asserts that the defendant was generally negligent in failing to persuade the City of Dallas to abate the incidences of trespassing by young motorcyclists on the airport's premises. In her pleading the plaintiff characterized this second theory as one falling under the "attractive nuisance" doctrine.

The United States countered by filing a third-party complaint against Zielke, Thomson and the City of Dallas. The government contended that the primary negligence of these third-party defendants was the proximate cause of Juan's death and therefore the United States was entitled to indemnification or contribution in the event the plaintiff's main action was successful.

Upon the City of Dallas' motion, the impleader action against it was dismissed.[3] Under Texas law,[4] the operation of an airport by a municipal corporation such as the City of Dallas, has been declared to be a governmental function.[5] Likewise under Texas law, a municipal corporation is not liable for torts arising out of the performance of a governmental function.[6] In 1970 the Texas legislature enacted the Texas Tort Claims Act,[7] which placed limitations upon this doctrine of immunity. These limitations are of no avail in this instance because Section 14 of the Texas Tort Claims Act provides that the Act shall not apply to "any claim based upon the theory of attractive nuisance". The City of Dallas cannot be held liable to the plaintiff. The defendant's third-party claim is derivative only and therefore it too is barred. The City's immunity from liability is not defeated because it is asserted in an impleader action for contribution or indemnity.

The evidence and testimony presented at trial and the parties' accompanying memoranda of law have presented the Court with three major questions. First is the issue of the United States' liability under either or both of the plaintiff's theories. Secondly, the defendant has raised the defense of contributory negligence and, finally, the question of third-party liability must be considered. I find that the government did breach its "look-out duty" which was owed to the plaintiff's decedent. However, the Court must also conclude that plaintiff's recovery is barred because of her decedent's contributory negligence. As recovery is barred, the issue of indemnity or contribution raised by the third-party complaint is mooted.

---

2. 28 U.S.C. §§ 1346(b), 2671 et seq.

3. The remaining third-party defendants, Zielke and Thomson, waived their right to jury trial in return for the government's stipulation that the maximum third-party liability exposure be set at $20,000.

4. The right to indemnity or contribution under the Federal Tort Claims Act is governed by state law. See United States Lines, Inc.

v. United States, 470 F.2d 487 (5th Cir. 1972).

5. Vernon's Tex.Rev.Civ.Stat.Ann. art. 46d–15 (1969).

6. See Tompkins v. City of El Paso, 449 F.2d 842 (5th Cir. 1971).

7. Vernon's Tex.Rev.Civ.Stat.Ann. art. 6252–19 (1970).

## I. THE GOVERNMENT'S LIABILITY

The plaintiff's action against the defendant United States was bottomed on two theories of negligence. At trial counsel for the plaintiff distinguished these theories as "specific" and "general". First, it was contended that the defendant was negligent because it breached its "look-out" duty in failing to specifically warn the approaching aircraft of Juan Villaba's presence on the airport runway. In the plaintiff's view the defendant was charged with a duty, owed to the trespassing cyclist, to warn any approaching aircraft of the cyclist's presence on the airport premises.

The plaintiff's second theory of recovery is more complex and novel. She argues that the government breached its duty, owing to Juan Villaba, to require the City of Dallas to abate the general hazard caused by motorcyclists trespassing on the premises of Redbird Airport.

■ The government challenged both theories by asserting that the F.A.A. owed no duty to insure the safety of those on the ground. The Court finds this argument unappealing. The purpose of the Federal Aviation Act of 1958[8] is to promote aviation safety. This purpose extends to the safety of persons on the ground, as well as that of pilots and others aboard an aircraft.[9] The F.A.A. has the statutory authority and responsibility to prescribe air traffic rules and regulations for the protection of persons and property on the ground.[10]

■ The F.A.A. controllers in the Redbird Airport tower breached their look-out and reporting duties by failing to inform themselves of the danger on or near runway 17, and failing either to communicate this information to the Cessna or to refuse the aircraft landing clearance until the runway was known to be clear.[11] The breach of this duty, which is owed to those on the ground, as well as airmen, was a proximate cause of the collision resulting in Juan Villaba's death.

■ Commencing at least one year prior to the date of Juan Villaba's death, both the City of Dallas and the F.A.A. had become aware of the frequent presence of trespassing motorcyclists upon the airport premises.[12] Well defined ruts on "bike-trails" existed upon the airport property, and one such trail extended to an area in close proximity to the north end of runway 17, where the collision occurred. Possessing this knowledge the City of Dallas did not act to prevent further unauthorized entries.

Beginning in 1968 and for a period continuing on through the time of Juan Villaba's death, the F.A.A. undertook to conduct and perform a program of non-regulatory safety. The major facet of this program was a printed form, denominated "Safety Improvement Report", which was used systematically by F.A.A. personnel at Redbird Airport. The purpose of the program and said forms in particular was:

> To provide an informal means of reporting acts or conditions that may have an adverse effect on aviation safety. Examples of reportable items are: uncontrolled vehicle traffic on airports; . . .[13]

The program was non-regulatory in nature because the F.A.A. could not enforce the program via penal measures.

---

8. 49 U.S.C. § 1303.

9. *See* Arney v. United States, 479 F.2d 653 (9th Cir. 1973).

10. *See* 49 U.S.C. § 1348(c) ; City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973).

11. *See* Moloney v. United States, 354 F.Supp. 480 (S.D.N.Y.1972) ; Marino v. United States, 84 F.Supp. 721 (E.D.N.Y.1949).

12. This along with the presence of an assortment of other unauthorized persons such as bicyclists, archers, hunters, horseback riders and pedestrians.

13. Safety Improvement Report, S.W. Form 8000–6 (8/68).

The F.A.A. can exercise penal enforcement powers against an airport owner when such airport is the recipient of federal subsidies, which are granted pursuant to the Airport and Airway Development Act of 1970.[14] Redbird Airport was not such a recipient and therefore the F.A.A. chose to enforce this program with its "persuasive powers". The persuasive safety program specifically encompassed the subject of unauthorized vehicles on the airport premises.

The plaintiff contended that the F.A.A., by its undertaking of this safety program, became obligated to cause the City of Dallas to abate the trespassing on Redbird Airport. This theory is founded on the principle of tort law, which provides that one who undertakes, gratuitously, to render services to another, which should be recognized as necessary for the protection of third persons, is subject to liability to such third person for physical harm resulting from the actor's negligent performance of the undertaking.[15]

The F.A.A. responded that it was powerless to require the City of Dallas to abate the hazards present on airport property. The F.A.A. characterized its non-regulatory program as one totally dependent upon the City's voluntary compliance. It claimed to lack the enforcement tools which were necessary to effect an abatement of the ground hazards. The F.A.A. felt it needed penal enforcement power in lieu of program based on mere "persuasion".

It is the Court's opinion that the federal government, acting through its agent the F.A.A., lacked the power necessary to have required the City of Dallas to abate the safety hazard involved here. The Court is well aware that the F.A.A. is quite pervasive in the regulation of general aviation within this country and that a necessary concomi-

tant to this regulation is a considerable influence in safety aspects of general aviation. Despite this onmipresence, I do not believe that the F.A.A.'s "persuasive powers" provided it with the "leverage" necessary to have forced the City to effect the needed safety measures. Certainly one would have hoped that the City of Dallas would have abated the hazard on its own initiative. In this situation, where the F.A.A. lacked any means of viable enforcement, I find it impossible to hold the federal government liable for the City's failure to take adequate safety precautions in its operation of a municipal airport.

The case at bar is distinguishable from Rapp v. Eastern Airlines, Inc.,[16] which was cited by the plaintiff in support of her second theory of recovery. In *Rapp* the subject airport was a recipient of federal financial assistance, and as a condition precedent to the award of such assistance the F.A.A. was required to assure that the airport's aerial approaches were free of safety hazards. The F.A.A. was held to have possessed the enforcement powers necessary to have required abatement of safety hazards. Here, such enforcement powers were lacking.

## II. CONTRIBUTORY NEGLIGENCE

I must hold that the plaintiff's recovery is barred by Juan Villaba's contributory negligence. This difficult conclusion is required by the common law doctrine of contributory negligence.

█ In an action under the Federal Tort Claims Act, the substantive rights of the parties are determined by the law of the state in which the cause of action arose.[17] The substantive law of Texas governs the rights of the parties in this action.

█ This cause of action arose before September 1, 1973, when the new Texas comparative negligence statute[18]

14. 49 U.S.C. § 1701 et seq.

15. *See* Restatement of Torts (Second) § 324A.

16. 264 F.Supp. 673 (E.D.Pa.1967).

17. *See* Barnes v. United States, 349 F.2d 553 (5th Cir. 1965).

18. Tex.Laws 1973, ch. 28 § 1, at 41.

**1366**

became effective. Therefore the doctrine of contributory negligence governs this action and plaintiff must be denied recovery if she or her decedent has contributed in any manner or in any amount to the injury which was complained of.

■■■■■ According to Texas law, the standard of care for a minor child is only that care which a child of the same age, intelligence and experience would use. City of Austin v. Hoffman, 379 S. W.2d 103 (Tex.Civ.App.1964).[19] If a child is under the common law bracket of fourteen years of age, the Texas courts apply the standard of care applicable to children, and if the child is above the age of fourteen, the adult standard of care is applied, unless it be shown that the child is wanting in discretion or laboring under the handicap of some mental disability. City of Austin v. Hoffman, *supra*. At the time of his death Juan Villaba was fourteen years old, and would have been fifteen years old one month after the accident. Testimony given at the trial indicated that Juan was a bright, industrious young man who did well in school. No testimony or evidence was presented that might have indicated that he was lacking in discretion or laboring under a mental disability.

■■■■ When a minor assumes to act as an adult he may be judged by an adult standard of care. City of Austin v. Hoffman, *supra*. This doctrine has evolved because of the danger that a minor creates to other members of the general public in such instances. Juan Villaba was almost fifteen years old and was riding a "trail bike" on the premises of an airport near an active runway. Such activity must be judged as dangerous to other members of the general public.

The conclusion is inescapable that Juan Villaba appreciated and understood the danger of riding his motorcycle on the airport property. He had been on the Redbird premises previously and had been a flight passenger on an aircraft maintained at Redbird. Juan was well aware of the activities being carried on at the airport. His act of riding the motorcycle in the proximity of an airport runway was contributorily negligent conduct, which falls below the standard of care to which he was required to conform for his own safety. This conclusion is necessary regardless of whether Juan's conduct is measured by an adult standard or a child's standard of care. Such contributory negligence was a proximate cause of Juan Villaba's death and, as such, it bars the plaintiff's recovery in this suit.

Government's attorney is requested to prepare and submit appropriate order.

---

19. *See* Taylor v. Bair, 414 F.2d 815 (5th Cir. 1969).