**Marilyn Joyce SELLFORS, Etc., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 80–7897.**

United States Court of Appeals, Eleventh Circuit.

Feb. 16, 1983.

Rehearing and Rehearing En Banc Denied March 23, 1983.

---

Robert W. Patrick, Gary M. Cooper, E.A. Simpson, Jr., Atlanta, Ga., for plaintiff-appellant.

Cecile Hatfield, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before RONEY and KRAVITCH, Circuit Judges, and PITTMAN,* District Judge.

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

**1364**

PITTMAN, District Judge:

This action was commenced by the appellant, Marilyn Joyce Sellfors, against the United States of America under the Federal Tort Claims Act (FTCA), 28 U.S.C.A. §§ 1346(b), 2671–80, for damages due to the loss of life of her husband, Ernest F. Sellfors, who was killed on February 26, 1973, when the Lear Jet aircraft he was piloting crashed shortly after take-off from the De-Kalb-Peachtree Airport in Chamblee, Georgia. The crash resulted from a sudden loss of power during take-off when the aircraft's engines ingested birds on the take-off from the runway. The source of the birds' attraction to the vicinity was a county landfill situated adjacent to the runway on county property.

Appellant alleges that the United States was negligent, through the acts or omissions of its agent, the Federal Aviation Administration (FAA), in failing to perform claimed statutory obligations under the Airport and Airway Development Act of 1970, 49 U.S.C.A. §§ 1701 *et seq.* (AADA). Appellant also alleges negligence on the part of the FAA air traffic controllers on duty at that time in failing to observe and warn her husband of the presence of birds in close proximity to the runway.

At the conclusion of the trial, the judge ruled from the bench that the air traffic controllers were not negligent in failing to warn the deceased pilot of the birds prior to take-off. The court found that there was no evidence presented that the controllers had sighted any birds immediately prior to the mishap. The district court subsequently issued a written order dismissing the cause of action finding that the AADA obligations would not support a claim under the FTCA. It is from these rulings that the plaintiff-appellant appeals.

We affirm.

■ DeKalb County, Georgia is the owner and operator of both the airport and the contiguous landfill. The county airport was a recipient of federal funds under the AADA and the runway from which the ill-fated aircraft took off was constructed with such funds. As a statutory prerequisite to receiving funds for airport development, the sponsor entered into some six contracts (grant agreements) with the FAA assuring the agency that any existing hazards to air navigation present at the airport would be eliminated or corrected. The grant agreements further promised that future hazards would be prevented.

The first birds appeared at the airport in 1969. Their number has increased each year, becoming most plentiful in the winter months. Flocks of great numbers of these birds have been sighted from time to time alongside and flying across the runways. The record reflects FAA knowledge of the hazard in 1972. The agency conducted investigations, negotiated with the county and applied friendly coercion in an attempt to eliminate the problem.

The deceased pilot was fully aware of the hazardous situation regarding birds at the DeKalb-Peachtree Airport as it was his home base. The fatal crash occurred on Mr. Sellfors second flight from the airport that day. Additionally, the aviation flight charts (Jeppeson charts) in Mr. Sellfors' possession when he crashed contained a warning of danger from birds.

At approximately 9:00 a.m. the day of this crash, birds were sighted in the grass adjacent to Runway 16. The air traffic controllers, as well as the airport manager, were alerted to their presence.

The manager, using a shotgun, managed to kill or frighten off these birds. While out on the airport perimeter he inspected the active Runway 20 left and observed no birds near that runway. The tower reported seeing no birds in that area at any time on that morning.

There was substantial activity on Runway 20 left throughout the morning and at no time were there reports of bird sightings in that area. The pilot which preceded Mr. Sellfors testified that he saw a small flock of birds in the grass alongside the left or eastern edge of Runway 20 left, but did not report this to the tower. The location he described was approximately 1000–1500 feet from the control tower and about one-

half mile from Mr. Sellfors, awaiting on the taxi pad. Another aircraft landed before Mr. Sellfors began his take-off. The pilot of that plane did not report seeing birds.

The trial judge, in his order of September 30, 1980, found that there was no evidence that the air traffic controllers had sighted any birds immediately prior to the accident. These findings will not be disturbed unless clearly erroneous. *North River Energy Corp. v. U.M.W.A.*, 664 F.2d 1184 (11th Cir. 1981). A thorough review of the evidence in this case did not reveal anything to dispute the above findings. The substantial evidence, in fact, provides clear support that the air traffic controllers were not negligent in failing to warn Mr. Sellfors of the hazard.

The court next addresses appellant's contentions as to the liability of the FAA for failing to enforce compliance of the county's contractual assurances entered into pursuant to the AADA. A particular subsection of the Act directs the Secretary of Transportation to obtain assurances from the government entity seeking federal airport development funds that existing hazards to air navigation will be removed and that further hazards will not thereafter be established.[1]

The United States contends that the FAA owed no duty of care towards the appellant's husband as a result of the requirements of this statute, but that even if such a duty did exist, the acts or omissions complained of fall within the discretionary function exception to the FTCA. 28 U.S.C.A. § 2680(a). *See generally* Annot., 47 A.L.R.Fed. 85 (1980), *see also Hawaiian Airlines, Inc. v. United States*, No. 80–170–ORL–CIV–Y, slip op. (M.D.Fla. May 7, 1981); *Safeco Ins. Co. v. United States*, No. 81–1015, slip op. (N.D.S.D. Dec. 31, 1981).

Section 1346(b) of the FTCA waives the sovereign immunity of the United States for injuries

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, *if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.*

*See Brown v. United States*, 653 F.2d 196, 201 (5th Cir. Unit A 1981).

The district court correctly held that the determining factor does not consist of a duty arising from a statute, but whether a private person would be liable under Georgia law for the same acts or omissions. The FTCA was not intended to redress breaches of federal statutory duties. *See Baker v. F & F Investment Co.*, 489 F.2d 829, 835 (7th Cir.1973); *Devlin Lumber & Supply Corp. v. United States*, 488 F.2d 88, 89 (4th Cir. 1973); *Davis v. United States*, 395 F.Supp. 793, 795 (D.Neb.1975), *affirmed per curiam*, 536 F.2d 758 (8th Cir.1976). As further support, the Supreme Court has determined that Congress, in drafting the FTCA, was concerned primarily with providing redress for the garden variety common law torts recognized by state law. *See Dalehite v. United States*, 346 U.S. 15, 28, 73 S.Ct. 956, 97 L.Ed.2d 1427 (1953). *See also United States v. Smith*, 324 F.2d 622, 624–25 (5th Cir.1963).

The analysis herein involves two separate inquiries: (1) does the AADA of 1970 create a statutory duty on the part of the United States owing to third parties using federal-

---

1. Section 1718, last paragraph, provides, in part:

 To insure compliance with this section, the Secretary shall prescribe such project sponsorship requirements, consistent with the terms of this subchapter, *as he considers necessary. Among other steps to insure such compliance* the Secretary is authorized to enter into contracts with public agencies, on behalf of the United States. (emphasis added).

 Airport hazard is defined as:
 [A]ny structure or object of natural growth located on or in the vicinity of a public airport, or any use of land near such airport, which obstructs the airspace required for the flight of aircraft in landing or taking off at such airport or is otherwise hazardous to such landing and takeoff of aircraft.
 49 U.S.C.A. § 1711.

ly funded airports and (2) do the acts or omissions complained of constitute a common law tort cognizable under state law?

■ The AADA was passed for the principal purpose of providing "for the expansion and improvement of the Nation's airport and airway system." 1970 U.S.Code Cong. & Ad.News 3047, 49 U.S.C.A. § 1701. This was necessitated by the burgeoning United States economy and population which suffered from the lack of a national system of adequate airport facilities. *Id.* at 3049–59, 3083. Neither the legislative history nor the AADA itself reflects any congressional intent that the Act create duties on the part of the federal government owing to private individuals using sponsored airport facilities. The purpose of the Act is to provide federal funds for use in developing and modernizing airports and related facilities in conjunction with a national transportation policy and other national concerns of efficient and nondiscriminatory use of such monies. It was not intended to regulate the operation of airports. *City of Dallas, Texas v. Southwest Airlines Co.,* 371 F.Supp. 1015, 1024–25 (N.D.Tex.1973), *affirmed* 494 F.2d 773 (5th Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974).

The legislative history shows no intent of Congress to impose a legal duty on the FAA, running to each user of a federally funded airport, to insure the absolute safety of each facility constructed or maintained with federal funds. The Supreme Court has not considered the issue. In *Miree v. DeKalb County,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977), plaintiffs claimed that the Airport and Airway Development Act of 1970 provided an implied civil right of action to recover for death or injury due to violation of the Act. The Court declined to consider the argument because it had not been pleaded, argued or briefed before the district court or the Court of Appeals. The Court noted, "The fact that this asserted basis of liability is so obviously an afterthought may be some indication of its merit

. . . ." 433 U.S. at 33, 97 S.Ct. at 2495. *See Miree v. United States,* 588 F.2d 453 (5th Cir.1979) (under Georgia law, survivors of air crash victims could not maintain suit against county as third-party beneficiaries of contract between county and the Federal Aviation Administration); *Obenshain v. Halliday,* 504 F.Supp. 946, 956 (E.D.Va. 1980) (plaintiff denied standing to sue United States as a third-party beneficiary of a grant-in-aid contract issued pursuant to Federal Aviation Act, 49 U.S.C.A. §§ 1301 *et seq.*) [2]

Appellant cites *Rapp v. Eastern Airlines, Inc.,* 264 F.Supp. 673 (E.D.Pa.), *affirmed* 399 F.2d 14 (3rd Cir.1967), *cert. denied* 393 U.S. 979, 89 S.Ct. 446, 21 L.Ed.2d 439 (1968), *vacated without opinion and by agreement* 521 F.2d 1399 (3rd Cir.1970), as support for the proposition that the failure by the United States to require an airport authority to remove a garbage dump creating a bird hazard raises a cause of action under the AADA. *Rapp* was not brought under the FTCA, but was jurisdictionally based on the Suits in Admiralty Act, 46 U.S.C.A. §§ 741–752. Therefore, *Rapp* did not consider whether the Airport and Airway Development Act created a duty to airport users which could be enforced against the United States under the Federal Tort Claims Act. "Any action brought pursuant to the [FTCA] Act must meet the Act's particular statutory prerequisites for government liability." *United Scottish Ins. Co. v. United States,* 614 F.2d 188, 191–92 (9th Cir.1979). In addition, *Rapp* was vacated and has no precedential value. *See O'Connor v. Donaldson,* 422 U.S. 563, 577 n. 12, 95 S.Ct. 2486, 2495 n. 12, 45 L.Ed.2d 396 (1975). At the most, the *Rapp* holding would only be persuasive. But the *Rapp* court gave no legal basis for its conclusion so that it is of no value in deciding this case.

Appellant also relies on *Starr v. United States,* 393 F.Supp. 1359 (N.D.Tex.1975), arising under the FTCA and the Federal Aviation Act, 49 U.S.C.A. §§ 1301 *et seq.*

---

**2.** The AADA was preceded by and amends portions of the Federal Aviation Act of 1958, 49

U.S.C.A. §§ 1301 *et seq.* 1970 U.S.Code Cong. & Ad.News 3047, 3117–18.

The status of the FAA and the airport in *Starr* was distinguishable from the case *sub judice.* The federal assistance involved therein did not consist of receiving federal monies. To be sure, the district court in *Starr* found this distinction to be dispositive and distinguished the facts before it from those in *Rapp. Id.* at 1365.

Having distinguished *Rapp* and finding no government liability the *Starr* court stated:

> The F.A.A. can exercise penal enforcement powers against an airport owner when such airport is the recipient of federal subsidies, which were granted pursuant to the Airport and Airway Development Act of 1970.

*Id.* (footnote omitted). The statement was unnecessary to the determination of that case. This Court's reading of the AADA and its legislative history does not reveal any basis for such a statement.

We hold, therefore, that the AADA does not give rise to a statutory duty on the part of the United States owed to private persons using federally funded airports. *Cf. Zabala Clemente v. United States,* 567 F.2d 1140 (1st Cir.1977), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978) (FAA not liable by way of a self-assumed duty to inspect for failure to warn that plane was overweight and lacked a proper flight crew). The First Circuit reasoned in *Zabala Clemente v. United States,* 567 F.2d at 1149:

> The cases we have just considered turned on the lack of direct statutory authority for the existence of a federal duty of care to a particular class of individuals. It should be noted that even where specific behavior of federal employees is required by statute, liability to the beneficiaries of that statute may not be founded on the Federal Tort Claims Act if state law recognizes no comparable private liability.

In ascertaining whether Georgia law would impose liability on private persons under the facts before us, we must first reject appellant's insistence upon automatically applying the state negligence per se law. *United Scottish Ins. Co. v. United States,* 614 F.2d 188, 192 (9th Cir.1979), *accord, Blessing v. United States,* 447 F.Supp. 1160, 1186 n. 7 (E.D.Pa.1978).

Georgia law does not recognize a comparable private liability. In *Miree v. United States,* 242 Ga. 126, 249 S.E.2d 573 (1978), a jet crashed because it had ingested birds swarming over an airport and adjacent county garbage dump. The Georgia Supreme Court held that private users of the airport were not "third party beneficiaries" of an agreement between the county and the Federal Aviation Administration. "The mere fact that a member of the public would have benefited from the performance does not create third party intended beneficiary status under Georgia law." 249 S.E.2d at 580.

▮ Georgia law has consistently held that municipalities are not liable for the negligence of their officers in the performance of governmental functions. Ga.Code Ann. § 69–307 (1967); *Greenway v. Thompson,* 368 F.Supp. 387 (D.C.Ga.1973); *Poole v. City of Louisville,* 107 Ga.App. 305, 130 S.E.2d 157 (1963).

▮ Even though violation of a federal statutory duty does not automatically invoke state law principles of negligence per se, where the government, in the performance of such duties does act negligently, liability may be found under state law because of the relationship created: the good samaritan doctrine. *See Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

▮ The good samaritan doctrine, as enunciated in Restatement (Second) of Torts § 323 (1965),[3] has been adopted by

---

**3.** Section 323 provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from failure to exercise reasonable care to perform his undertaking, if

 (a) his failure to exercise such care increases the risk of such harm, or

 (b) the harm is suffered because of the other's reliance upon the undertaking.

the Georgia courts. The interpretations of the doctrine have uniformly held that where one does not create the dangerous condition and takes no remedial measures, he is not liable as a good samaritan. *Cook v. Parrish,* 105 Ga.App. 95, 123 S.E.2d 409 (1961). Federal funding, standing alone, does not link the FAA to "creation" of the hazardous landfill. By entering into the grant agreements with DeKalb County, the FAA did not cause to exist the dangerous condition nor did such act in any manner increase the risk of harm to persons using the airport. Furthermore, there is no evidence that the pilot Sellfors relied upon these grant agreements to insure airport safety. In fact, the record does not reflect that Mr. Sellfors even had knowledge of the existence of the grant agreements.

█ The lack of proof of the necessary elements of the good samaritan doctrine leads this Court to conclude that no cause of action exists under Georgia law. The FTCA is therefore inapplicable.

█ As an alternative defense the government argues that the omissions involved fall within the discretionary exception to the FTCA. 28 U.S.C.A. § 2680(a). As the Supreme Court said in *Dalehite,* "[w]here there is room for policy judgment and decision there is discretion." 346 U.S. at 36, 73 S.Ct. at 968. Assuming, *arguendo,* that the FAA possessed the power to enforce compliance with its grant agreements, the Secretary was acting as a governmental policy-maker in his decision to apply negotiation and diplomacy rather than legal measures. Weighing the governmental interest in insuring the most efficient use of federal funds against such remedies as closing down the airport or instituting other legal sanctions and deciding in favor of a less antagonistic approach clearly constitutes the type of discretion reflected in the history of the FTCA. *See e.g., Miller v. United States,* 378 F.Supp. 1147 (E.D.Ky.1974), *affirmed,* 522 F.2d 386 (6th Cir.1975) (no tort liability for failure to promulgate stricter air safety regulations); *Smith v. United States,* 375 F.2d 243 (5th Cir.1967) (refusal of Attorney General to bring suit for viola-

tion of federal statute within discretionary function exception).

The decision of the district court is hereby AFFIRMED.