Robert E. HOWELL, et al.,
Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

Karel A.M. ZEE, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Ted N. SCHOBERT, et al.,
Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

Lunelle G. MIDDLEBROOKS,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Bonnie LYVERS, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Taylor E. LITTLE, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Charles BOLAND, et al.,
Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

Danielle Marie HUTCHESON, et al.,
Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

Kay B. LANE, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Teresa S. SAUNDERS,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Chester A. WILLIAMS, et al.,
Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

Cornelia V. BROGAN, et al.,
Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

Alice GORDON, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Corina YIN, et al.,
Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

J. Crayton PRUITT, et al.,
Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 90–8149.

United States Court of Appeals,
Eleventh Circuit.

June 6, 1991.

lia V. Brogan, Edward A. Holmes, Jr. and Alice Gordon.

Nicholas C. Moraitakis, Gorby, Reeves, Moraitakis & Whiteman, P.C., Atlanta, Ga., for Corina Yin.

Ralph C. McBride, Marietta, Ga., for Ted N. Schobert and Dorothy M. Schobert.

John Allen Howard, Atlanta, Ga., for all plaintiffs-appellants.

Andrew M. Scherffius, Atlanta, Ga., for Chester A. Williams.

. William C. Lanham, Atlanta, Ga., for J. Pruitt, et al.

David M. Wiegand, Federal Aviation Admin., James C. Wilson, U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, D.C., and Nina L. Hunt, Asst. U.S. Atty., Atlanta, Ga., for defendant-appellee.

Before HATCHETT and EDMONDSON, Circuit Judges, and PECKHAM *, Senior District Judge.

EDMONDSON, Circuit Judge:

This consolidated appeal arises from an airplane crash in which plaintiff-appellants' decedents were killed. Plaintiffs sued the United States under the Federal Tort Claims Act (FTCA), alleging negligence on the part of the Federal Aviation Administration (FAA). Concluding that the FAA owed no duty to plaintiffs' decedents, the district court granted summary judgment for the United States against all plaintiffs. We agree that the FAA owed no duty to plaintiffs' decedents under the circumstances of this case and, therefore, affirm.

### I.

The plane that crashed was owned and operated by Air Carrier Express Services, Inc. (ACES) but was apparently also piloted by personnel of another airline, Midnite Express. Two days before the accident, a Midnite Express pilot was scheduled to use the plane for a "check ride"—an annual ride each pilot must take in the company of

J. Russell Phillips, Greene, Buckley, Jones & McQueen, Atlanta, Ga., for Corne-

* Honorable Robert F. Peckham, Senior U.S. District Judge for the Northern District of California, sitting by designation.

an FAA inspector to ensure his or her continued competency to fly. *See* 14 C.F.R. § 135.293(b). When the FAA inspector arrived for the planned check ride, however, he was told by Midnite Express personnel (and he later personally observed) that the plane's fuel was contaminated. The Midnite Express director of maintenance had already placed a handwritten sign on the instrument panel stating the plane was grounded, at least for Midnite Express personnel, due to contaminated fuel. After discussing the situation with the maintenance director and two Midnite Express pilots, the FAA inspector cancelled the check ride and left without taking further action.

Later that afternoon the Midnite Express maintenance director told the president of ACES about the fuel contamination, warning him that the plane was not airworthy and outlining what needed to be done to make it safe. The president of ACES apparently chose to ignore the problem, however, and flew the plane later that same day. Two days later the plane crashed, killing seventeen people.

A National Transportation Safety Board (NTSB) investigation revealed that the crash resulted from a loss of power caused by the ingestion of contaminated fuel. The contamination itself was probably caused by improper fueling procedures contrary to those specified in FAA regulations and the carrier's operating manual: ACES had a practice of using a portable unfiltered pump to fuel aircraft, and the record shows that such an unfiltered pump was used to fuel this plane immediately before the crash.

Plaintiffs contend that the FAA inspector, upon seeing the contaminated fuel two days before the crash, should have taken further action (such as, grounding the plane, issuing an official notice, or initiating an investigation into the cause of the contamination) and that his failure to do so breached a legal duty owed to the future passengers of the ill-fated plane. But the district court concluded that the FAA inspector owed no legal duty to the passengers and, thus, held that the inspector's failure to act could not constitute negligence as a matter of law.[1]

## II.

Under the Federal Tort Claims Act, the United States is liable for the negligent conduct of its employees "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *see also* 28 U.S.C. § 1346(b). The FTCA was not intended to create new causes of action; nor was it intended as a means to enforce federal statutory duties. *See Sellfors v. United States,* 697 F.2d 1362, 1365 (11th Cir.1983).[2] Instead, Congress's chief intent in drafting the FTCA was simply to provide redress for ordinary torts recognized by state law. *See id.* (citing *Dalehite v. United States,* 346 U.S. 15, 28, 73 S.Ct. 956, 964, 97 L.Ed. 1427 (1953)). So, whether the United States is liable for the FAA inspector's failure to act depends on whether a similarly situated private employer would be liable for such an omission under the law of Georgia, the place where the allegedly negligent act or omission occurred. *See* 28 U.S.C. § 1346(b).

Appellants contend that the FAA inspector should have grounded the plane, issued a notice, or initiated an investigation; and that his failure to do so breached various duties established by federal statutes and

---

**1.** The United States also argued that summary judgment was appropriate based on the "discretionary function" exception to the limited waiver of sovereign immunity granted by the FTCA. *See Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); 28 U.S.C. § 2680(a). Because we affirm the district court's grant of summary judgment based on lack of duty, we do not address the possible applicability of the discretionary function exception to these facts.

**2.** Appellants contend the Supreme Court has said, since *Sellfors,* that the FTCA can be used to

enforce federal statutory duties. *See Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). It is true that *Berkovitz* involved alleged violations of safety standards set by federal statute. *Berkovitz* was solely about the applicability of the discretionary function exception, however. It was *not* about the existence of a duty, and the *Berkovitz* Court specifically noted that it was not addressing whether the complaint stated a claim under relevant state law. *See id.* at 535 n. 2, 108 S.Ct. at 1958 n. 2.

internal FAA orders. Would a private party be liable for such a failure under Georgia law?

■ A private party would not, of course, be regulating air flight, and his behavior would not be governed by the statutes and FAA orders on which appellants rely. Thus, it might be arguable that the United States could not be liable under the FTCA for negligence in performing "uniquely governmental" functions—such as regulation of flight—because there is no identical private activity for purposes of comparison. This position was long ago rejected by the Supreme Court, however. *See Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). The comparison of activities need not be exact. Instead, we look to the closest state law analogue: the "good samaritan" doctrine. *See id.* at 64–65, 76 S.Ct. at 124; *Sellfors,* 697 F.2d at 1367.[3] As described by the *Indian Towing* court, this doctrine provides that one who undertakes to warn of danger, and thereby induces reliance, must perform his undertaken task in a careful manner. 350 U.S. at 64–65, 76 S.Ct. at 124.

Georgia has adopted the most common version of "good samaritan" doctrine, as set forth at § 324A of the Second Restatement of Torts:

*Liability to Third Person for Negligent Performance of Undertaking.* One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*See Huggins v. Aetna Casualty & Surety Co.,* 245 Ga. 248, 264 S.E.2d 191 (1980). This section 324A analysis has been utilized in Georgia cases to evaluate liability of private parties for negligent safety inspection. *See, e.g., Universal Underwriters Ins. Co. v. Smith,* 253 Ga. 588, 322 S.E.2d 269 (1984); *Argonaut Ins. Co. v. Clark,* 154 Ga.App. 183, 267 S.E.2d 797 (1980).

## III.

■ For purposes of discussion we assume the existence of all elements of "good samaritan" liability except the last three alternative requirements[4] and focus our attention on those: Did the FAA inspector's acts or omissions increase the risk of harm to future passengers, purport to perform a duty owed by the airlines to future passengers, or induce reliance by future passengers?

The FAA inspector's failure to ground the plane, issue a notice, or initiate an

---

**3.** This "good samaritan" approach, first utilized in *Indian Towing* to evaluate FTCA liability for negligent lighthouse maintenance, has since been used by all circuits considering FTCA liability in a regulatory-enforcement context. *See, e.g., Raymer v. United States,* 660 F.2d 1136 (6th Cir.1981); *United Scottish Ins. Co. v. United States,* 614 F.2d 188 (9th Cir.1979); *Zabala Clemente v. United States,* 567 F.2d 1140 (1st Cir.1977); *see also Patentas v. United States,* 687 F.2d 707 (3d Cir.1982) (interpreting analogous scope-of-government-liability provision in Suits in Admiralty Act).

**4.** Because the FAA inspector was on-hand to perform a "check ride," not to inspect the plane's airworthiness at the time his allegedly negligent omission occurred, it is unclear to us that the first requirement for "good samaritan" liability—an undertaking to render services—was in fact fulfilled. In *United Scottish Ins. v.*

*United States,* the only case to hold the government liable under the FTCA for negligent inspection by the FAA, the alleged negligence did occur in the course of an undertaken safety inspection. *See* 692 F.2d 1209 (9th Cir.1982), *rev'd on other grounds sub nom. United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). And the same is true of the Georgia cases applying "good samaritan" analysis to evaluate the liability of private parties for negligent safety inspection. *See, e.g., Universal Underwriters Ins. Co. v. Smith,* 253 Ga. 588, 322 S.E.2d 269 (1984). Given our conclusion that none of the later three alternative requirements (increase of risk, undertaking duty owed by another, or reliance) are satisfied, we need not decide whether the FAA's general undertaking to regulate air safety would be a sufficient basis alone on which to base "good samaritan" liability.

investigation did not increase the risk of harm under Georgia law. *See Argonaut,* 267 S.E.2d at 799. In *Argonaut* the Georgia Court of Appeals said that, for purposes of the section 324A "good samaritan" doctrine, a risk is only increased "when a nonhazardous condition is made hazardous through the negligence of a person who changed its condition or caused it to be changed." *Id.* The FAA inspector caused no such change in the condition of this plane or its fuel.

Nor can we say the FAA or its inspector undertook to perform a duty owed by the airline to its passengers. Whatever the FAA does or does not do, the Federal Aviation Regulations assign the chief responsibility for ensuring the airworthiness of an aircraft and its crew to the craft's owner, operator, or pilot. *See, e.g.,* 14 C.F.R. §§ 91.163(a), 135.413(a). The duties of the FAA supplement rather than supplant the duties of the airline—duties which the airline could not, and did not, delegate.

To establish "good samaritan" liability, therefore, appellants must show reliance. Yet appellants do not attempt to show reliance; instead, they argue that, where the alleged duty is based on statute, reliance should be presumed. Under Georgia law, however, the required reliance must be actual though not necessarily specific; in answering a question certified to it by this court, the Georgia Supreme Court held that if plaintiff cannot point to specific acts or omissions in his own precautions made in reliance on the inspection, plaintiff's use of the defective instrumentality may demonstrate reliance "*where the fact of inspection is known* ... but the defect is unknown." *Universal Underwriters,* 322 S.E.2d at 272 (emphasis added). We believe this means that Georgia law, at a minimum, requires knowledge that the allegedly negligent inspection occurred before reliance can be found and "good samaritan" liability can attach. Here, nothing shows the passengers knew of the unplanned FAA "inspection" two days before their flight[5]; and thus they could not and did not rely on it.

This conclusion under state law—that plaintiffs, if unable to point to specific acts or omissions in their decedents' precautions made in reliance on the inspection, must at least show knowledge of the specific fact of inspection—is not changed by the alleged duty's basis in federal statute. For we have (in another case applying "good samaritan" doctrine under Georgia law), at least implicitly, rejected the contention that reliance for purposes of § 324A may be presumed where the alleged duty is statutorily based. *See Sellfors,* 697 F.2d at 1368 (no FTCA liability for FAA failure to perform alleged statutory obligations under Airport and Airway Development Act because there was "no evidence that the pilot Sellfors relied" on existence of those obligations).[6] And three other circuits agree. *See Patentas v. United States,* 687 F.2d 707, 717 (3d Cir.1982) (obligations imposed on Coast Guard by Ports and Waterways Safety Act do not constitute duties to third persons in absence of actual reliance, meaning knowledge of allegedly negligent inspection which induces them to forego other remedies or precautions); *Raymer v. United States,* 660 F.2d 1136, 1143 (6th Cir.1981) (negligence in inspection by Bureau of Mines employees not basis for FTCA liability where no justifiable reliance); *Zabala Clemente v. United States,* 567 F.2d 1140, 1143, 1145 (1st Cir.1977) (obligations imposed by Federal Aviation

---

5. Even if we assume public knowledge that the FAA does periodically inspect planes for airworthiness, this generalized knowledge would not be sufficient to give rise to reliance under Georgia law. Especially where, as here, plaintiffs can point to no physical manifestations of reliance other than their decedents' use of the defective instrumentality, a more specific knowledge about the occurrence of the inspection seems to be required. *See, e.g., Universal Underwriters,* 322 S.E.2d at 270 (plaintiff actually saw inspection being made).

6. Appellants attempt to distinguish *Sellfors* based on the specific statute relied on for the existence of the duty; in *Sellfors* the alleged obligation was based on the Airport and Airway Development Act, while appellants here rely on the Federal Aviation Act. Given that neither Act creates an implied private cause of action, however, and that appellants contend reliance should be presumed whenever a duty is imposed by statute, we do not see the relevance of this distinction.

Act and internal FAA order did not establish "actionable duty to those whom the order sought to protect" where "there is no evidence that anyone relied"). *But see United Scottish Ins. v. United States*, 692 F.2d 1209, 1211 (9th Cir.1982) (concluding relationship between FAA inspectors and pilots, owners, and passengers is "imbued with reliance"), *rev'd on other grounds sub nom. United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

### IV.

Appellants cannot show increased risk of harm, undertaking to perform a duty owed by another, or reliance. Since one of these three alternatives must be shown to establish "good samaritan" liability under Georgia law—and thus United States liability under the Federal Tort Claims Act—the district court's grant of summary judgment for the United States is AFFIRMED.[7]

---

**7.** Appellants also challenge the district court's denial of their motions for partial summary judgment and for reconsideration. Because we agree with the district court that there was no duty, and thus can be no negligence as a matter of law, these motions were properly denied.