[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 25, 2004
THOMAS K. KAHN
CLERK

No. 03-13484

D. C. Docket No. 01-00003-CV-CDL-6

THOMAS C. PATE,
NELLIE PATE,

Plaintiffs-Appellees,

versus

OAKWOOD MOBILE HOMES, INC.,
et al.,

Defendants,

UNITED STATES OF AMERICA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(June 25, 2004)**

Before BARKETT and KRAVITCH, Circuit Judges, and FORRESTER*, District
Judge.

_____

*Honorable J. Owen Forrester, United States District Court Judge for the Northern
District of Georgia, sitting by designation.

BARKETT, Circuit Judge:

The United States appeals a judgment awarding damages to Thomas Pate ("Pate")[1] against the Occupational Safety and Health Administration ("OSHA") pursuant to the Federal Tort Claims Act ("FTCA") for injuries Pate suffered as a result of unsafe work conditions at his work site. The United States challenges the district court's legal conclusion that OSHA's negligence in this case creates a cognizable claim under the FTCA. Because we agree that there is no basis for liability under the facts of this case, we reverse.

## BACKGROUND

Pate, a roofer employed by the private roofing contractor Howard Enterprises ("Howard"), sustained serious injuries when he fell from the top of a mobile-home on which he was working at a mobile-home manufacturing plant in Georgia owned by Destiny Industries, Inc. ("Destiny"). Over a year before Pate's accident, inspectors from OSHA issued a citation against both Destiny and Howard for the failure to provide adequate fall protection at the facility where Pate was injured. The citations informed Destiny and Howard that the fall protection

---

[1]Nellie Pate, Pate's wife, was also awarded damages for loss of consortium related to her husband's injuries.

violations were to be abated within a month.[2] While Destiny and Howard abated some of the hazards cited by OSHA, they failed to abate the specific hazard that led to Pate's injury.

For its part, OSHA was required, pursuant to its own regulations, to ensure the abatement of the fall protection violation by (1) making certain that Destiny and Howard certified that the hazards had been abated and (2) requiring that Destiny and Howard timely submitted documents confirming the abatement of the hazards. The OSHA inspector involved in this case was unaware of these requirements. Furthermore, when Destiny and Howard did not provide the appropriate certification, OSHA failed to initiate procedures designed to ensure the abatement had been accomplished.

After a bench trial, the district court found that had OSHA fulfilled its mandatory responsibility to ensure abatement, Pate's accident would have been prevented because the appropriate safety equipment would have been installed. Accordingly, the district court entered judgment on Pate's behalf pursuant to the FTCA.

## DISCUSSION

---

[2] Pate fell on February 1, 1999. OSHA had inspected the relevant facilities on November 13 and 14, 1997. The citations were issued on December 19, 1997. The relevant citation stated in prominent, highlighted text: "Date By Which Violation Must be Abated:12/31/97."

3

We review the application of the FTCA de novo. Andrews v. United States, 121 F.3d 1430, 1438 (11th Cir. 1997) (internal citations omitted). The FTCA provides that the United States may be held liable for the negligent conduct of its employees "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Congress's chief intent in drafting the FTCA was not "to create new causes of action" but "simply to provide redress for ordinary torts recognized by state law." Howell v. United States, 932 F.2d 915, 917 (11th Cir. 1991). It was not "intended as a means to enforce federal statutory duties." Id. Indeed, "even where specific behavior of federal employees is required by statute, liability to the beneficiaries of that statute may not be founded on the Federal Tort Claims Act if state law recognizes no comparable private liability." Sellfors v. United States, 697 F.2d 1362, 1367 (11th Cir. 1983). Thus, in this case liability is not automatically established by the fact that OSHA inspectors failed to perform their mandatory obligations. The United States can only be found liable if a comparable private party would likewise be liable under Georgia law.

Of course, a private party would not ordinarily be engaged, as is OSHA, in enforcing compliance with workplace safety regulations. However, we have rejected the position that the FTCA does not afford a remedy for negligence in the

4

performance of "uniquely governmental functions" simply "because there is no identical private activity for purposes of comparison." Howell, 932 F.2d at 918. We have held that the "comparison of activities need not be exact." Id. In this case, however, we cannot find support for OSHA's liability under either the cases cited by the district court or under the closest state law analogy, the good samaritan doctrine. See, e.g., Indian Towing Co. v. United States, 350 U.S. 61, 64-65 (1955); Howell, 932 F.2d at 918 n.3; Sellfors, 697 F.2d at 1367.

Relying on United States v. Aretz, 280 S.E.2d 345 (Ga. 1981) and Phillips v. United States, 956 F.2d 1071 (11th Cir. 1992), the district court found that "under Georgia law, a private actor who assumes a particular responsibility for employee safety can be liable if he negligently discharges that responsibility and that negligence proximately causes injuries to the employees his undertaking was designed to protect." We do not find these cases applicable because OSHA cannot be said to have "assume[d] a particular responsibility for employee safety." While OSHA's laudable goal is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions," 29 U.S.C. § 651(b), OSHA does not take final responsibility for achieving this end. See 29 U.S.C. § 654(a); Irving v. United States,162 F.3d 154, 169 (1st Cir. 1998) (en banc) (The Occupational Health and Safety Act ("OSH Act") "in no uncertain terms, places

5

primary responsibility for workplace safety on employers, not on the federal government."); Galvin v. Occupational Safety & Health Admin., 860 F.2d 181, 185 (5th Cir. 1988) ("the Occupational Safety and Health Act squarely places the burden of compliance with workplace safety standards on the employer" (emphasis in original)); Cunningham v. United States, 786 F.2d 1445, 1447 (9th Cir. 1986) (noting as part of discretionary function analysis that under OSH Act, "[t]he employer has the statutory responsibility for maintaining a safe workplace"); see also Otis Elevator Co. v. OSHRC, 581 F.2d 1056, 1058 (2d Cir. 1978) ("'Final responsibility for compliance with the requirements of this act remains with the employer.'" (quoting legislative history)).

Furthermore, the two cases the district court relied upon are not analogous. In Aretz the Georgia Supreme Court found that the government had a duty to warn the employees of a contractor about a danger the government itself had created. In that case, the government initially mis-classified a hazardous material as non-detonative and, when it learned the material was actually detonative, failed to warn the independent contractor storing the material. Aretz, 280 S.E. 2d at 348-49. Despite the fact that the government provided in its agreement with the contractor that the contractor was not entitled to rely on the government's storage classifications, id. at 348, the Georgia Supreme Court found that the government

6

nevertheless could be held liable because it owed a duty to warn the contractor that it had mis-classified the hazardous material. Id. at 350-51 ("Where one by his own act, although without negligence on his part, creates a dangerous situation, he is under a duty to remove the hazard or give warning of the danger so as to prevent others from being injured where it is reasonably foreseeable to occur.").

In Pate's case, by contrast, OSHA did not itself "create[] a dangerous situation." OSHA inspected a manufacturing plant where it found a pre-existing dangerous situation. Cf. Howell, 932 F.2d at 919 (finding that an FAA inspector's failure to ground or initiate an investigation of a plane that was suspected of containing contaminated fuel "did not increase the risk of harm under Georgia law" because the "inspector caused no such change in the condition of this plane or its fuel"). Indeed, OSHA acted to lessen the danger by issuing a citation stating that the employer was to abate the hazard by a certain date. Thus, the current case is completely at odds with Aretz. In Aretz, the government had created a danger and failed to warn an employer, with whom it had a contractual agreement, of the danger; in this case, OSHA did not create a hazard but nevertheless warned Pate's employer that a hazard existed.

Phillips is similarly distinguishable. In that case, as in Aretz, the harm at issue occurred in the performance of a government contract in which work was

7

being done for the government's benefit. In <u>Phillips</u>, the Army Corps of Engineers

("Army Corps") hired an independent contractor to construct extensions to aircraft

hangers on an Army base. 956 F.2d at 1073. Phillips, an employee of the

contractor, was injured during the construction when the scaffolds he was working

on collapsed under him. <u>Id.</u> We found that the Army Corps had a duty of care

because in its contractual relationship with Phillip's employer it "assumed safety

responsibilities" that it failed to discharge with ordinary care. <u>Id.</u> at 1078. Citing

to the regulation that contained the pertinent contractual provisions, we affirmed

the district court's conclusion "that the Army Corps had specific responsibilities

with regard to the construction project's safety."[3] <u>Id.</u> at 1074 (citing 29 C.F.R. §

52.236-13 (1991)). Furthermore, we noted that the Army Corps met with the

contractor in a "mutual understanding meeting" in which the government informed

the contractor of some of the safety procedures. <u>See id.</u> at 1073. Thus, there was

convincing evidence in <u>Phillips</u> that the Army Corps contractually retained certain

safety responsibilities involving the construction project. Indeed, an Army Corps

engineer at the project testified that "his office had the <u>responsibility</u> for assuring

---

[3]While some of the government's safety responsibilities derived from the Army Corps Safety Manual, the applicability of this manual itself was incorporated into the agreement between the government and the contractor. <u>See</u> <u>Phillips</u>, 956 F.2d at 1074; 29 C.F.R. § 52.236-13 (1991).

'safety with a dedicated commitment to free the job site of unsafe conditions and activities which may result in injury.'" Id. (emphasis added).

In sum, Phillips involved the government acting in its capacity as a contracting-party and a landowner.  Had the Army Corps endeavored to construct the project itself, there would be no question that it would be responsible for the safety conditions of the project.  In Phillips the issue was simply whether the Army Corps had delegated its safety responsibilities in hiring a contractor to do the construction project for the Army Corps.  We found that under the facts of that case, the government indeed had retained certain responsibilities which were negligently carried out.  In contrast to Phillips, in the case at hand the harm did not take place on government property, the government did not contract with the employer, and the employer was not providing the government with a service. Instead, OSHA was acting in its capacity as a regulator-enforcer to promote the welfare of all workers.

Normally, the most analogous approach in determining whether the government is liable in the regulator-enforcer context under state law is the good samaritan doctrine.  See Howell, 932 F.2d at 918 & n.3.  While the good samaritan doctrine may not always be the only appropriate approach in this context, here it is far more analogous than the government contract cases.  However, even the good

samaritan doctrine cannot support liability here. Georgia has adopted the good

samaritan doctrine as set forth in Section 324A of the Restatement (Second) of

Torts, which states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Howell, 932 F.2d at 918. Pate only asserts the third prong, 324A(c), as a basis for

liability,[4] arguing that his employers relied on OSHA. We need only make two

points. First, there is insufficient evidence to support a finding that Pate's

employers relied on OSHA in their failure to abate the hazard. Indeed, OSHA

issued a citation for the safety violations it found which unequivocally stated in

---

[4]The other two prongs clearly do not apply. With regard to the first prong of analysis, under Georgia law "risk is only increased 'when a nonhazardous condition is made hazardous through the negligence of a person who changed its condition or caused it to be changed.'" Howell, 932 F.2d at 919 (quoting Argonaut Ins. Co. v. Clark, 267 S.E.2d 797, 799 (Ga. App. 1980)). Under this standard, we determined that an FAA inspector's failure to ground a plane that was suspected of containing contaminated fuel "did not increase the risk of harm under Georgia law" because the "inspector caused no such change in the condition of this plane or its fuel." Id. The same is true in this case: OSHA only failed to ensure the abatement of a pre-existing hazard–it did not increase the hazard. Liability similarly cannot be established under the second prong because the OSH Act makes the employer, not OSHA, responsible for workplace safety. 29 U.S.C. § 654(a).

highlighted text: "Date By Which Violation Must be Abated: 12/31/97."  This date was more than a year before Pate's injury.  Second, even if for some reason Pate's employers did rely on the fact that OSHA had not followed up in ensuring abatement, this reliance would not be justified under the facts of this case.  As stated above, the OSH Act places ultimate responsibility on the employer in ensuring compliance with safety regulations, not OSHA.  Pate's employers would not be justified in relying on OSHA's omissions in their failing to abate a known hazard.  Cf. Myers v. United States, 17 F.3d 890, 903-04 (6th Cir. 1994)(reliance upon mine inspectors under Mine Safety and Health Act would be "manifestly unreasonable and unjustified" "[i]n light of the clear Congressional purpose to ensure that the primary responsibility for safety remains with the mine owners and miners").[5]

For the foregoing reasons, this matter is REVERSED and REMANDED for further proceedings consistent herewith.

---

[5]Pate further argues that Daley v. United States, 792 F.2d 1081 (11th Cir. 1986) supports a finding of liability. Citing to Gill v. United States, 429 F.2d 1072, 1075 (5th Cir. 1970), in Daley we found that air traffic controllers owed a duty of care to comply with the government's Air Traffic Control Manual.  792 F.2d at 1085-86.  However, Gill makes clear that liability in air traffic controller cases stems from the public's reliance on such controllers.  Gill, 429 F.2d at 1075 ("The United States may be liable under the Federal Tort Claims Act for negligent provision of services upon which the public has come to rely.").  As discussed above, under the facts of this case, we do not believe that Pate or his employers justifiably relied on OSHA's omissions.