[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11329

_____

D.C. Docket No. 1:19-cv-04056-CC

SAMANTHA SMITH,
individually,
ANN HERRERA,
the Court Appointed Personal Administrator
as administrator of the estate of
Robert Steven Smith,
MICAH SMITH,
the Court Appointed Personal Administrator
as administrator of the estate of
Sydney Smith,
MICAH SMITH,
individually,

Plaintiffs-Appellants,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 27, 2021)

Before BRANCH, GRANT, and TJOFLAT, Circuit Judges.

GRANT, Circuit Judge:

Wanting to hold someone accountable after a tragedy is natural. Family members and estate administrators of a father and daughter who were killed when their car struck two mailboxes sued the United States over those deaths. They say that the Postal Service is liable because it failed to warn the mailboxes' owners that the mailboxes were out of step with various safety regulations. But even assuming that they are correct—about both the regulatory infractions and the Postal Service's duty to provide warnings about those infractions—the United States cannot be held liable. The Federal Tort Claims Act waives sovereign immunity for the acts or omissions of a federal employee only when a private person would be liable under state tort law for those same acts or omissions. Here, because the plaintiffs have not pointed to any state-law duty, we affirm the district court's dismissal of their lawsuit.

## I.

Just a few days after Thanksgiving in 2016, Steve Smith was driving with his 21-year-old daughter Sydney while under the influence of alcohol. Shortly after midnight, their car veered off the road and smashed into a pair of mailbox supports that belonged to two neighboring families. Tragically, both Steve and Sydney died in the collision.

The plaintiffs, members of the Smiths' family and administrators of their estates, sued the United States, seeking damages under the Federal Tort Claims Act. They alleged that the brick, stone, and concrete mailbox supports that Steve

and Sydney crashed into were in violation of U.S. Postal Service regulations as well as a host of federal guidelines, state statutes, and local ordinances. They also argued that the Postal Service's "failure to notify the Homeowners of the non-conforming mailbox installations constituted negligence *per se*" under Georgia law. The United States moved to dismiss the suit, arguing that it had sovereign immunity. The district court granted that motion, and the plaintiffs appealed.

## II.

We review de novo the dismissal of a complaint for sovereign immunity. *King v. U.S. Gov't*, 878 F.3d 1265, 1267 (11th Cir. 2018). The burden of establishing that a claim falls within our jurisdiction "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

## III.

Sovereign immunity generally protects the United States and its agencies against suit. *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *In re Custom Contractors, LLC*, 745 F.3d 1342, 1347 (11th Cir. 2014). This "familiar doctrine" has ancient roots that can be traced back to England in the Middle Ages. *The Siren*, 74 U.S. (7 Wall.) 152, 153–54 (1868); *see also* 1 Frederick Pollock & Frederic William Maitland, *The History of English Law Before the Time of Edward I* 515–18 (2d ed. 1898). As Blackstone explained, "no suit or action can be brought against the king, even in civil matters, because no court can have jurisdiction over him." 1 William Blackstone, *Commentaries* *242. By the time of the American founding, the doctrine of sovereign immunity was "well established

3

in English law." *Alden v. Maine*, 527 U.S. 706, 715 (1999). And this doctrine, like many others in English law, was also recognized early on as a feature of American law: "The universally received opinion is, that no suit can be commenced or prosecuted against the United States." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 411–12 (1821) (Marshall, C.J.).

That is, at least not without its permission. Sovereign immunity does not bar all suits against the United States—only those filed *without its consent*. *See, e.g.*, *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The federal government can waive its sovereign immunity and has done so from time to time. *See, e.g.*, *Begner v. United States*, 428 F.3d 998, 1002 (11th Cir. 2005) (stating that 28 U.S.C. § 1346(a)(1) waives sovereign immunity for tax-refund cases). Such waivers, though, cannot be implicit—for courts to have jurisdiction over a suit against the United States, the waiver of sovereign immunity must be "unequivocally expressed in statutory text." *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 290 (2012) (quotation omitted).

Once a waiver of sovereign immunity is recognized, it still "must be strictly construed in favor of the United States" and "not enlarged beyond what the language of the statute requires." *United States v. Idaho ex rel. Dir., Idaho Dep't of Water Res.*, 508 U.S. 1, 7 (1993) (quotation omitted); *see also* 14 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3654 (4th ed. 2015) (explaining that the government may dispute a suit "on the ground that the relief requested is outside the scope of the waiver"). Along those same lines, courts are required to "strictly observe" all terms and conditions that accompany a waiver of

4

sovereign immunity. *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015). Any ambiguities are thus interpreted in one direction—in favor of immunity. *See Cooper*, 566 U.S. at 290.

One prominent waiver of sovereign immunity, and the one we consider here, is found in the Federal Tort Claims Act. *See* Pub. L. No. 79-601, §§ 401–424, 60 Stat. 842 (1946) (codified as amended at 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671–2680); *Brownback v. King*, 141 S. Ct. 740, 746 (2021). Before the Act was passed, a person injured by a federal employee's act (or omission) could sue the individual federal employee directly. *Brownback*, 141 S. Ct. at 745. But sovereign immunity prevented a suit against the United States itself—even when a "similarly situated private employer would be liable under principles of vicarious liability." *Id.*

It is easy to imagine why that seemed problematic for injured parties; just like many other employers, the federal government had far deeper pockets than its individual workers. And the process required to get compensation from those pockets was "notoriously clumsy." *Molzof v. United States*, 502 U.S. 301, 305 (1992) (quotation omitted). Instead of filing a lawsuit against the United States, injured parties were required to petition Congress directly; Congress then sorted through the hundreds of petitions it received each year, in the end providing relief for just a small fraction of would-be plaintiffs by passing private bills. *See Brownback*, 141 S. Ct. at 745–46 & n.1; James E. Pfander & Neil Aggarwal, Bivens*, The Judgment Bar, and the Perils of Dynamic Textualism*, 8 U. St. Thomas L.J. 417, 424–25 n.39 (2011). In the face of criticism about the "speed and

5

fairness" of this process, Congress passed the Federal Tort Claims Act, which transferred "most tort claims" from Congress to the federal courts. *Brownback*, 141 S. Ct. at 745–46 (quotation omitted). At least for that category of claims, Congress waived the sovereign immunity of the United States. *Id.* at 746.

But Congress's waiver was selective. The scope of the waiver in the Federal Tort Claims Act is defined by 28 U.S.C. § 1346(b)(1). There, Congress gave federal courts subject matter jurisdiction over—and hence waived sovereign immunity for—claims against the United States seeking money damages for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission" of a federal employee acting within the scope of his employment. 28 U.S.C. § 1346(b)(1); *see also Brownback*, 141 S. Ct. at 746. For claims concerning federal employee conduct that was outside the scope of employment, or seeking a remedy other than money damages, federal courts would continue to lack jurisdiction.[1] *See Alvarez v. United States*, 862 F.3d 1297, 1308 (11th Cir. 2017); *Askew v. United States*, 786 F.3d 1091, 1093 (8th Cir. 2015).

The Act also includes another important limitation, one that turns out to be decisive here: Congress extended jurisdiction only for claims in which "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). So

---

[1] The Federal Tort Claims Act also exempts "certain categories of claims" from its waiver of sovereign immunity, including claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218 (2008); 28 U.S.C. § 2680(h); *see also* 28 U.S.C. § 2680(a)–(n).

the Federal Tort Claims Act simply allows those injured by the acts or omissions of a government employee to recover damages in the same way that they would if they were injured by the acts or omissions of a private person. *See Brownback*, 141 S. Ct. at 749; 28 U.S.C. § 2674. It follows that the Federal Tort Claims Act does not cover breaches of federal statutory or regulatory duties that do not apply to private parties. *See Howell v. United States*, 932 F.2d 915, 917 (11th Cir. 1991). And "the law of the place where the act or omission occurred" refers to "the law of the state where the alleged tort occurred." *Zelaya*, 781 F.3d at 1323 (quotation omitted). That means a plaintiff must plausibly allege (among other things) that a private person would be liable for same the act or omission under state law. *Id.* at 1322; *see also Brownback*, 141 S. Ct. at 749. If a plaintiff fails to establish that state-law duty, or any of Section 1346(b)(1)'s other jurisdictional elements, the United States retains its sovereign immunity and the suit cannot go forward. *Brownback*, 141 S. Ct. at 749; *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1157 n.3 (11th Cir. 2020).

Here, the plaintiffs argue that the U.S. Postal Service's negligence contributed to the Smiths' deaths and that the United States waived its sovereign immunity for that negligence claim under the Federal Tort Claims Act. But for their claim to survive, they must plausibly allege that a private person would be liable to them for the accident under Georgia law. *See* 28 U.S.C. § 1346(b)(1); *see also Brownback*, 141 S. Ct. at 749; *Zelaya*, 781 F.3d at 1323. They cannot.

To start, Georgia's negligence law is "well established." *Goldstein, Garber & Salama, LLC v. J.B.*, 300 Ga. 840, 841 (2017) (quotation omitted). A

7

negligence claim in Georgia, as elsewhere, requires "four elements: a duty, a breach of that duty, causation and damages." *Id.* (quotation omitted).  Georgia law also recognizes a concept known as "negligence per se."  Simply put, if a statute establishes a duty, "violating that statute may result in a breach of the duty, constituting negligence per se."  *Nash v. Reed*, 825 S.E.2d 853, 857 (Ga. Ct. App. 2019); *see also Goldstein*, 300 Ga. at 845 (explaining that "negligence per se arises when a statute is violated" along with certain other conditions (quotation omitted)).

As we have explained, the plaintiffs' claim depends on identifying a state-law tort, which in turn depends on establishing a state-law duty.  The plaintiffs point to only one alleged Georgia tort: they say that the Postal Service was required to notify homeowners if their mailboxes did not conform to various safety standards, and that its failure to do so was negligence per se under Georgia law.  The cited standards include those set in postal service regulations, a Georgia statute that prohibits the obstruction of public roads, and a local ordinance that forbids the construction of mailboxes that are a "fixed-object hazard to vehicles."  Standards Governing the Design of Curbside Mailboxes, 66 Fed. Reg. 9509, 9513 (Feb. 8, 2001); O.C.G.A. § 32-6-1; Roswell, Ga., Code § 18.2.1(d).  According to the plaintiffs, the Postal Operations Manual instructs the Postal Service to notify homeowners if the supports for their mailboxes violate any of these requirements.  And they contend that the Postal Service's failure to do so constitutes negligence per se under Georgia law.

The problem for the plaintiffs is that the duty they allege would spring only from federal guidance—the Postal Operations Manual.  But as we have said, to

8

trigger liability under the Federal Tort Claims Act, a federal employee's conduct must be "independently tortious under applicable state law." *Dalrymple v. United States*, 460 F.3d 1318, 1327 (11th Cir. 2006). The violation of a federal manual that arguably references state law would not qualify. Even assuming that the "duty" plaintiffs seek to enforce exists, it arises only under federal law; they have not pointed us to any state or local laws that require private parties to inform homeowners when their mailbox supports fail to comply with federal, state, or local requirements. And without a state-law duty, there can be no state negligence claim for the violation of that duty. In short, because the plaintiffs have not identified a state-law duty, they have failed to plausibly allege that "the United States, if a private person, would be liable to the claimant in accordance" with state law. 28 U.S.C. § 1346(b)(1).

The plaintiffs' invocation of Georgia's negligence per se doctrine does not save their argument. The "violation of a federal statutory duty does not automatically invoke state law principles of negligence per se." *Sellfors v. United States*, 697 F.2d 1362, 1367 (11th Cir. 1983); *see also, e.g.*, *Johnson v. Sawyer*, 47 F.3d 716, 728–29 (5th Cir. 1995) (en banc). And really, we do not see how it could—to hold the United States liable for the violation of a federal duty merely because a state recognizes the doctrine of negligence per se would create liability for the federal government where no such liability existed for a private person. That would be a dramatic expansion of the Federal Tort Claims Act's waiver of sovereign immunity. It is thus no surprise that courts have generally refused to find a state-law duty in a "federal statute or regulation merely because the law of

the relevant state included a general doctrine of negligence *per se*." *Johnson*, 47 F.3d at 728–29; *see also, e.g.*, *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1025–26 (9th Cir. 2001); *Sellfors*, 697 F.2d at 1367. So whether or not a state recognizes negligence per se, Federal Tort Claims Act plaintiffs must identify analogous state-law duties that would impose liability on private parties for similar conduct. *See Zelaya*, 781 F.3d at 1324.

The sovereign immunity of the United States thus "remains intact" for the claims brought in this lawsuit and "no subject matter jurisdiction exists." *Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996); *see also Brownback*, 141 S. Ct. at 749. Without subject matter jurisdiction, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

*    *    *

Because a private person would not be liable under state law for the allegedly tortious conduct identified by the plaintiffs, the Federal Tort Claims Act's waiver of sovereign immunity does not apply. We thus **AFFIRM** the dismissal of the plaintiffs' claims.