[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12733

Non-Argument Calendar

_____

KACI C. MYERS,

Plaintiff-Appellant,

*versus*

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-02486-CAP

_____

Before WILSON, LUCK, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff in this *pro se* action asserts medical malpractice claims under the Federal Tort Claims Act ("FTCA") arising from her treatment at the Atlanta Veterans Administration Medical Center ("VAMC"). Specifically, Plaintiff claims she received inadequate care from doctors at the VAMC during a hysterectomy and emergency surgery in 2016 and follow-up care in 2017. The Government moved for summary judgment on Plaintiff's FTCA claims and the district court granted the motion, holding that Plaintiff failed to present evidence that the VAMC doctors named in her complaint breached the applicable standard of care or that any such breach proximately caused Plaintiff's alleged injuries. After a careful review of the record and the briefing submitted by the parties, we **AFFIRM**.

## BACKGROUND

In her complaint, Plaintiff asserts numerous medical malpractice claims arising from her treatment by Drs. Jennifer Goedken and Alfredo Nieves[1] at the Atlanta VAMC.[2] The claims primarily relate to a hysterectomy Dr. Goedken performed on Plaintiff in 2016 and follow-up treatment for complications

---

[1] Dr. Nieves is alternately referred to in the record as Dr. Nieves and Dr. Nieves-Gonzalez. We refer to him in this opinion as Dr. Nieves.

[2] The operative complaint is Plaintiff's second verified *pro se* complaint.

provided by Drs. Goedken and Nieves at the VAMC ER the week after the surgery.

Plaintiff began treatment at the Atlanta VAMC clinic for various gynecological problems in August 2010.  Most relevant here, Dr. Goedken treated Plaintiff for pelvic and menstrual pain near the end of 2015.  After several unsuccessful courses of treatment, Dr. Goedken recommended, and Plaintiff agreed to undergo, a laparoscopic-assisted vaginal hysterectomy and labial cyst removal.

Dr. Goedken performed the hysterectomy on June 7, 2016. Plaintiff claims Dr. Goedken perforated her bowel with a Veress needle during the surgery, and that she failed to document the perforation in the surgical records.  Plaintiff alleges further that Dr. Goedken improperly discharged her from the hospital the day after surgery despite a high white blood cell count indicating an infection.

Plaintiff returned to the VAMC Emergency Room ("ER") on June 15, 2016, complaining of a swollen abdomen, loss of appetite, fever, and chills.  Plaintiff claims she arrived at the ER with sepsis, and the Government agrees that at some point during her treatment at the ER she met the criteria for sepsis, but not septic shock. Plaintiff was evaluated in the ER by Drs. Goedken and Nieves. Based on a pelvic and abdominal CT scan, Dr. Nieves determined that Plaintiff had a pelvic abscess. Plaintiff claims the CT scan indicated a bowel obstruction, but Dr. Nieves testified that Plaintiff's bowel was not obstructed but rather compromised externally due to infection.

Dr. Nieves performed surgery on June 16, 2016, to drain Plaintiff's abscess.  During the surgery, Dr. Nieves noted and removed a necrotic left ovary.  He also oversewed a small indentation on a segment of Plaintiff's bowel with dissolvable sutures, but he did not document the suturing procedure in the surgical records.  Dr. Nieves drained Plaintiff's abscess during the surgery as planned, but Plaintiff claims he negligently failed to submit a sample of the drainage to pathology.

When Dr. Nieves spoke to Plaintiff the day after the drainage surgery, he advised her that she had an infection, but he denied that her bowel was perforated.  In a subsequent patient care meeting, however, Plaintiff was advised that Dr. Nieves had stitched over a small dimple in her bowel during the drainage surgery to ensure the bowel would not open.  Plaintiff claims the size of the dimple is consistent with the size of a Veress needle.

Plaintiff had a slow recovery from the drainage surgery, but she was able to be discharged from the hospital on oral antibiotics on June 28, 2016.  She claims her recovery was hindered by her misdiagnosis with upper right stomach pain as her primary complaint instead of sepsis, abdominal abscesses, bowel injury, and necrotic left ovary.  According to Plaintiff the failure to properly diagnose her caused additional damage, including difficulty with her follow-up care in the fall of 2016 and her subsequent misdiagnosis and improper treatment with antibiotics when she returned to the ER in January 2017.

22-12733            Opinion of the Court                 5

Based on the alleged treatment errors described above, Plaintiff filed the *pro se* complaint in this case, asserting numerous medical malpractice claims under the FTCA. Briefly summarizing her claims, Plaintiff alleges in her complaint that Dr. Goedken perforated her bowel with a Veress needle during the hysterectomy surgery and compounded the error by failing to document the complication, that she prematurely dismissed Plaintiff from the hospital after her hysterectomy despite a high white blood cell count indicating an infection, and that she failed to properly diagnose sepsis when Plaintiff returned to the VAMC ER the following week. As for Dr. Nieves, Plaintiff alleges that he misdiagnosed her when he treated her at the VAMC ER, that he failed to document the bowel suturing procedure he performed during the drainage surgery, and that he failed to submit the drainage substance to pathology.[3]    According to Plaintiff, these medical errors caused

---

[3] Plaintiff's statement of facts attached to her complaint also includes allegations related to a sexual assault allegedly inflicted by a male chaperone during a gynecology visit to the VAMC in 2012 and harassment by an off-duty VA police officer in 2016. The district court held that Plaintiff had abandoned these claims. Plaintiff does not challenge that holding on appeal, and she does not present any substantive argument as to the claims in her appellate briefing, although she mentions in passing the sexual assault allegation. Accordingly, we find that Plaintiff has abandoned any sexual assault or harassment claims and we do not address those claims here. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.").

physical injury, pain and suffering, and emotional trauma compensable in the amount of $25 million in damages.

The parties filed cross-motions for summary judgment as to Plaintiff's FTCA claims. In support of its motion, the Government argued there was no competent evidence to establish (1) a breach of the applicable standard of care or (2) that Plaintiff's injuries were proximately caused by such a breach—both of which elements are essential to a medical malpractice claim under the legal standard that governs this case. Plaintiff, on the other hand, argued that the Government had admitted all the material facts underlying her claims and, consequently, that she was entitled to judgment on those claims as a matter of law.

The district court granted the Government's motion for summary judgment. The court noted in its summary judgment order that FTCA claims are governed by the law of the state where the alleged tort occurred, here Georgia. As argued by the Government, to prevail on a medical malpractice claim under Georgia law, a plaintiff must prove that (1) the medical professionals who are the subject of the claim breached a duty owed to the plaintiff by "failing to exercise the requisite degree of skill and care" in treating her and (2) the failure proximately caused the plaintiff's alleged injury. *See Zwiren v. Thompson*, 276 Ga. 498, 499 (2003). Georgia law generally requires both elements to be proven through expert testimony because they involve "specialized expert knowledge beyond the ken of the average layperson." *See id.* at 500. Because Plaintiff did not offer expert testimony as to either element, the district court

agreed with the Government that she did not present sufficient evidence to survive summary judgment. Accordingly, the court granted the Government's motion for summary judgment and denied Plaintiff's cross-motion.

Plaintiff appeals the district court's summary judgment order. Plaintiff concedes in her appellate brief that she failed to provide expert testimony to support her medical malpractice claims, but she argues that expert testimony is not required because some of her claims are grounded in principles of ordinary negligence and admitted errors rather than professional negligence. In support of this argument, Plaintiff relies on Dr. Nieves's testimony acknowledging that he failed to diagnose her with sepsis or to document her sepsis, bowel obstruction, and bowel suturing. In addition to being negligent, Plaintiff claims Dr. Nieves's documentation errors constituted fraudulent concealment and falsification of medical records and that they violated various state and federal laws, including O.C.G.A. §§ 16-10-94.1, 16-10-20, and 51-6-2 and 18 U.S.C. § 1035. Plaintiff also complains in her brief about discovery violations and procedural errors committed by the Government, including an untimely filed summary judgment motion.

As discussed below, the documentation errors, procedural issues, and discovery violations alleged in Plaintiff's appellate brief do not remedy her admitted lack of competent evidence to prove that any VAMC doctor or medical professional breached the applicable standard of care in treating her or that such a breach proximately caused the injuries for which she seeks to recover in her

complaint.  Contrary to Plaintiff's argument on appeal, the claims asserted in her complaint are for the most part grounded in professional negligence rather than ordinary negligence or admitted errors, and thus they require competent evidence proving professional negligence.  To the extent Plaintiff arguably alleges ordinary negligence in the form of documentation errors, she still needs—and admittedly has failed to provide—expert testimony to show how the errors proximately caused her claimed injuries.  Finally, Plaintiff did not assert a fraud or misrepresentation claim below, but even if she had, the statutes and regulations cited in her appellate briefing do not appear to give rise to a compensable claim under the FTCA, nor do they support her claimed damages in this case.  Accordingly, we affirm the district court's order granting summary judgment to the Government on Plaintiff's FTCA claims and denying Plaintiff's cross-motion.

## DISCUSSION

### I.     Standard of Review

We review the district court's summary judgment order *de novo*, applying the same standard as the district court.  *Travelers Prop. Casualty Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th 894, 904 (11th Cir. 2023).  When conducting our review, we construe the facts and draw all inferences in the light most favorable to the non-moving party.  *See Harrigan v. Metro Dade Police Dep't*, 977 F.3d 1185, 1192 (11th Cir. 2020).  Viewing the evidence in that manner, summary judgment is appropriate when "there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As a *pro se* litigant, Plaintiff's pleadings "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). However, this leniency does not give a court "license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## II.    Analysis

### A.    Abandoned Claims and Irrelevant Allegations

We note as an initial matter that Plaintiff abandoned many of the claims asserted in her appellate brief by not raising them below, and that she likewise abandoned several of the claims she asserted below by not addressing them on appeal. With respect to the former category of claims—claims that were abandoned below—Plaintiff argues on appeal that the Government is liable for fraudulent concealment, misrepresentation, and falsification of her medical records based on various documentation errors committed by Dr. Nieves. In support of these claims, Plaintiff cites state and federal laws governing medical record-keeping, including O.C.G.A. §§ 16-10-20, 16-10-94.1, and 51-6-2 and 18 U.S.C. § 1035,

as well as VA guidelines.[4]  According to Plaintiff, Dr. Nieves's failure to keep accurate medical records in her case violated these laws and thus gives rise to a claim for recovery.  Relatedly, Plaintiff argues on appeal that Dr. Nieves had a history of malpractice that could not be uncovered because he was registered under the name Dr. Nieves with the Georgia Medical Board but referred to himself as Dr. Nieves-Gonzalez while practicing at the VAMC, and that the discrepancy violated O.C.G.A. § 43-34A-3(c), a Georgia statute governing the creation and contents of physician profiles by the Georgia Composite Medical Board.

Even assuming Dr. Nieves violated the cited statutes and guidelines, Plaintiff makes no plausible argument that the violation is cognizable under the FTCA.  *See Smith v. United States*, 14 F.4th 1228, 1232 n.1 (11th Cir. 2021) (noting that the FTCA "does not cover breaches of federal statutory or regulatory duties that do not apply to private parties" and that it expressly excludes claims for "misrepresentation [and] deceit" (citation and quotation marks omitted)).  But in any event, Plaintiff abandoned her claims for fraud, misrepresentation, or falsification of records by failing to

---

[4] O.C.G.A. §§ 16-10-20 and 16-10-94.1 make it a crime to misrepresent or falsify statements in a document within the jurisdiction of the State government or to intentionally conceal, destroy, alter, or falsify a patient's health record, respectively.  Although O.C.G.A. § 51-6-2 creates a private cause of action for willful misrepresentation of a material fact, it does not establish a private cause of action for mere concealment except in certain circumstances.  Finally, 18 U.S.C. § 1035 makes it a crime to misrepresent or falsify a fact related to payment for healthcare benefits or services.

assert those claims below.[5]  *See Access Now v. Sw. Airlines Co., Inc.*, 385 F.3d 1324, 1332 (11th Cir. 2004) (explaining that this Court will entertain an argument raised for the first time on appeal only in exceptional circumstances that do not apply here, for example, if the issue involves a pure question of law or if its proper resolution is beyond any doubt).  Because the district court did not have an opportunity to rule on Plaintiff's fraud, misrepresentation, and falsification claims, we do not consider those claims on appeal.  *See id.* at 1332–33.

As to the claims abandoned on appeal, Plaintiff's appellate brief focuses solely on Dr. Nieves's failure to diagnose her with sepsis in the VAMC ER and his various alleged documentation errors.  It does not identify as an issue or otherwise address any of the claims in the operative complaint related to:  (1) Dr. Goedken's alleged negligence, including the perforation of Plaintiff's bowel with a Veress needle and her discharge from the hospital with a high white blood cell count, (2) Dr. Nieves's failure to submit the substances from Plaintiff's drainage surgery to pathology, or (3) treatment errors during Plaintiff's follow-up visit in January 2017.  Plaintiff presumably abandoned these claims because they so obviously fall into the category of medical negligence rather than ordinary negligence and, as such, they cannot survive summary judgment

---

[5] Although Plaintiff made a vague and passing reference to "fraud" in her summary judgment brief below, all the claims in her complaint are grounded in negligence.  She did not seek to amend her complaint to add such claims, nor did she otherwise suggest in her complaint that there was any basis for her to recover against the Government for fraud.

given Plaintiff's admitted failure to produce any expert testimony. *See Beach v. Lipham*, 276 Ga. 302, 304 (2003) ("The proof required to rebut th[e] presumption [medical services were performed in an ordinary, skillful manner] must come from expert medical witnesses." (quotation marks omitted)). Nevertheless, we affirm the district court's order granting summary judgment as to these claims on the ground of abandonment.[6] *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.").

---

[6] Although we rest our affirmance on abandonment grounds, we note that Plaintiff did not present any evidence in response to the testimony of Drs. Goedken and Nieves that they complied with the applicable standard of care throughout the course of her treatment. Specifically, Dr. Nieves testified that he inspected Plaintiff's entire bowel during the drainage surgery and did not see evidence of a perforation during the hysterectomy. As to her subsequent care, Dr. Goedken testified that the timing of Plaintiff's discharge was within the standard of care set out by the American College of Obstetricians and Gynecologists, that it is not unusual for a patient to have a blood cell count in the range Plaintiff experienced one day after surgery, and that discharge was appropriate given Plaintiff's measures on other benchmarks. Dr. Nieves stated that he and Dr. Goedken believed Plaintiff's symptoms at the ER were related to a postoperative pelvic abscess, which was not caused or exacerbated by medical negligence, and which was best treated by the interventions provided to her—antibiotics and drainage surgery. According to Dr. Nieves, he was unable to draw a culture from the drainage substance to send to pathology.

Finally, Plaintiff includes in her appellate brief a lengthy discussion of the Government's alleged procedural errors and discovery violations below.  For example, Plaintiff notes that the Government's motion for summary judgment was untimely and that the Government improperly sought to change its responses to Plaintiff's requests for admissions as to certain matters.  Plaintiff does not explain, and it is not readily apparent, how the procedural errors and discovery violations noted in her appellate brief are relevant to the district court's summary judgment decision.  Importantly, the errors and violations do not supply the evidence that is essential to Plaintiff's claims and that is missing from the record: expert testimony indicating that the doctors named in her complaint or other medical personnel at the VAMC breached the standard of care in treating her or that any such breach proximately caused her to suffer an injury.  Nor does Plaintiff argue that the errors or violations prevented her from producing such evidence. Plaintiff's arguments concerning these issues are thus irrelevant to her appeal, and we do not consider them further.

### B.    Plaintiff's Remaining FTCA Claims

As mentioned above, Plaintiff's argument on appeal relies entirely on Dr. Nieves's failure to diagnose her with sepsis in the VAMC ER, as well as his alleged documentation errors with respect to her sepsis, bowel obstruction and perforation, and bowel suturing.  Again, Plaintiff seeks to recover from the Government for injuries allegedly caused by these errors pursuant to the FTCA. As relevant here, the FTCA authorizes a plaintiff to pursue "claims against the [Federal Government] seeking money damages for

injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of a federal employee acting within the scope of his employment." *Smith*, 14 F.4th at 1232 (quotation marks omitted). The Government is liable under the FTCA for such a wrongful act or omission "if a private person" in like circumstances "would be liable to the [plaintiff] in accordance with the law of the place where the act or omission occurred." *Id.* (citing 28 U.S.C. § 1346(b)(1)). It is undisputed that Dr. Nieves was a federal employee acting within the scope of his employment when he treated Plaintiff. In the context of the FTCA, "the law of the place where the act or omission occurred refers to the law of the state where the alleged tort occurred." *Id.* (quotation marks omitted). Here, that state is Georgia.

As set out in her complaint, Plaintiff's claims sound in medical malpractice. To prevail under Georgia law on a medical malpractice claim, a plaintiff must prove: (1) a duty arising from the doctor-patient relationship, (2) a breach of that duty by failing to exercise the requisite degree of skill and care in providing treatment, and (3) that the failure proximately caused the plaintiff injury. *Zwiren*, 276 Ga. at 499. As to the second element, Georgia law presumes medical services have been provided in an ordinarily skillful manner and the plaintiff has the burden of proving otherwise. *Beach*, 276 Ga. at 303 (reaffirming the presumption of due care that applies in Georgia medical malpractice cases). Expert testimony generally is required to meet that burden. *Id.* at 304 ("The proof required to rebut [the] presumption [of due care in a medical malpractice case] must come from expert medical witnesses."

(quotation marks omitted)).  Likewise, a plaintiff must present expert testimony to establish causation in a medical malpractice case, and the proffered expert "is required to express some basis for both the confidence with which his [causation] conclusion is formed, and the probability that his conclusion is accurate." *Zwiren*, 276 Ga. at 501 (quotation marks omitted).

Plaintiff concedes that she failed to provide expert testimony to show either a breach of the standard of care by the VAMC doctors who treated her or that any such breach proximately caused her claimed injuries.  Nevertheless, Plaintiff argues the district court erred when it granted summary judgment to the Government because her claims are (1) grounded in ordinary negligence rather than professional negligence, and thus exempt from the expert testimony requirement or (2) supported by admissions of negligence made by the VAMC doctors.  It is true that a Georgia plaintiff is not required to present expert testimony if her claim against a medical professional involves ordinary negligence rather than professional negligence, but the claims set out in the operative complaint overwhelmingly—and clearly—involve professional negligence.  *See Se. Pain Specialists, P.C. v. Brown*, 303 Ga. 265, 271 (2018) ("Medical malpractice exists . . . where the act or omission by a professional requires the exercise of expert medical judgment." (quotation marks omitted)).  To the extent any of Plaintiff's claims arguably raise an issue of ordinary negligence, she still would need expert testimony to show that the negligence proximately caused the medical injuries claimed in her complaint, which she admittedly does not have.  Likewise, because of the lack of

competent evidence to establish causation, the admissions cited in Plaintiff's appellate brief do not save her FTCA claims in this case.

First, Plaintiff's claim that Dr. Nieves negligently failed to diagnose her with sepsis based on the symptoms she presented in the VAMC ER clearly is grounded in medical negligence rather than ordinary negligence. *See id.* at 266 (holding that the lower court "erred in concluding that an ordinary negligence instruction was authorized by evidence that a doctor . . . responded inadequately to medical data provided by certain medical equipment during a medical procedure"). As the Georgia Court of Appeals has explained, whether a claim alleges professional or ordinary negligence "depends on whether the . . . alleged negligence required the exercise of professional judgment and skill." *Giddens v. Med. Ctr. of Central Ga.*, 353 Ga. App. 594, 604 (2020) (citation omitted). A claim that "calls into question the conduct of the professional in his area of expertise" is grounded in professional negligence whereas a claim based on "[a]dministrative, clerical, or routine acts demanding no special expertise fall[s] in the realm" of ordinary negligence. *Id.* Choosing the correct diagnosis based on the array of symptoms presented by a patient in the ER is a quintessentially medical decision rather than an administrative or clerical act. *See Se. Pain Specialists, P.C.*, 303 Ga. at 266. As such, Plaintiff must present expert testimony to show that Dr. Nieves's failure to diagnose sepsis breached the applicable standard of care.

Nor can Plaintiff rely on an admission of negligence with respect to the sepsis diagnosis, as she argues in her appellate brief.

Plaintiff claims in her brief that Dr. Nieves admitted he failed to diagnose her with sepsis in the VAMC ER and, consequently, that she does not need expert testimony to establish that fact. Presumably the admission Plaintiff is referring to is the Government's statement of undisputed material fact indicating that Plaintiff "met the criteria for sepsis but not septic shock" when Dr. Nieves treated her at the VAMC ER. That statement establishes that Plaintiff displayed symptoms of sepsis at some point during her treatment at the VAMC ER, but it does not constitute an admission that Dr. Nieves or any other VAMC employee breached the standard of care in response to Plaintiff's symptoms, nor does any such admission appear anywhere else in the record. On the contrary, Dr. Nieves testified that based on Plaintiff's symptoms and a CT scan, he and Dr. Goedken believed she was suffering from a postoperative pelvic abscess, which was not caused or exacerbated by medical negligence, and which was best treated by the interventions provided to her: antibiotics and drainage surgery. In other words, Dr. Nieves did not admit negligence, but rather testified that his care met the applicable standard of care in diagnosing and treating Plaintiff's symptoms in the ER.

Several of Dr. Nieves's alleged documentation errors similarly call into play his medical judgment and expertise. For example, Plaintiff argues Dr. Nieves negligently failed to document her bowel obstruction and perforated bowel. According to Plaintiff, such documentation is an administrative or clerical act that requires no special expertise, and Dr. Nieves's failures in this regard thus qualify as ordinary negligence. The problem with Plaintiff's

argument is that Dr. Nieves testified that, in his opinion:  (1) Plaintiff's bowel was not obstructed but rather externally compromised due to infection and (2) there was no evidence Plaintiff's bowel was perforated, although he did see a dimple or indentation on a segment of the bowel that needed to be oversewn during surgery. Plaintiff did not present any expert testimony to challenge Dr. Nieves's opinion that she did not have an obstructed or perforated bowel, so the only inference that can be drawn from the record is that Dr. Nieves failed to document these conditions because he concluded Plaintiff did not suffer from them.  That again is a medical determination, the diagnosis and documentation of which cannot be considered ordinary negligence.  *See Giddens*, 353 Ga. App. at 604.

The only alleged documentation error that possibly could qualify as admitted or ordinary negligence is Dr. Nieves's failure to note in the surgical records the bowel suturing he performed during the drainage surgery.  As Plaintiff points out, Dr. Nieves, in his deposition, characterized this documentation failure as a "lapse." We will assume, though we do not decide, that this testimony shows a breach of the standard that applies to documentation.  We also will assume that Dr. Nieves's documentation error can be considered an administrative or clerical error, albeit the error is similar to a doctor's breach of the duty to inform a patient of her medical condition, which under Georgia law constitutes medical negligence.  *See Piedmont Hosp., Inc., v. D.M.*, 335 Ga. App. 442, 447 (2015) (holding that the plaintiff's claims based on his doctor's failure to notify him of positive HIV test results arose "out of the

breach of a professional duty to inform [the plaintiff] of his medical condition and thus must be considered classic medical malpractice claims").

Nevertheless, and even assuming Dr. Nieves's failure to document Plaintiff's bowel suturing qualifies as ordinary negligence or an admitted error, Plaintiff's FTCA claim still cannot survive summary judgment because she has not presented any competent evidence that the error proximately caused her to suffer an injury. Under Georgia law, "a plaintiff cannot recover for medical malpractice, even where there is evidence of negligence, unless [she] establishes . . . that the negligence either proximately caused or contributed to cause plaintiff harm." *Zwiren*, 276 Ga. at 500 (quotation marks omitted). Further, causation must be proven by expert testimony establishing a causal connection that is "more than mere chance or speculation." *Id.* at 501 (quotation marks omitted). Plaintiff admits she failed to present such expert testimony in this case.

In short, even assuming Dr. Nieves breached the standard of care when he failed to document Plaintiff's bowel suturing procedure, there is no competent evidence in the record to show that the breach proximately caused Plaintiff's claimed injuries. Plaintiff claims Dr. Nieves's documentation error made it difficult for her to get proper follow-up care and caused her to experience mental struggles and PTSD, as well as kidney injury, irritable colon, and adhesions. But without expert testimony to substantiate and explain it further, the claimed connection between Dr. Nieves's

failure to document the bowel suturing and Plaintiff's alleged injuries is "mere . . . speculation." *Id.* As such, the district court correctly granted the Government's motion, and denied Plaintiff's cross-motion, for summary judgment as to the FTCA claims asserted in this case.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order granting the Government's motion for summary judgment on Plaintiff's FTCA claims and denying Plaintiff's cross-motion.