[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-10662

Non-Argument Calendar

_____

ZANE BALSAM,

Plaintiff-Appellant,

*versus*

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:20-cv-80958-DMM

_____

Before JILL PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

A jury convicted Zane Balsam of federal crimes. At sentencing, the district court imposed a lengthy custodial sentence and required him to pay $50 million in restitution. The court also ordered him to forfeit assets.

Years later, Balsam, proceeding *pro se*, filed a civil lawsuit against the United States. He alleged that to satisfy his restitution obligation the government had seized assets from him that were not identified in the court's forfeiture order and therefore beyond the government's reach. He sought money damages as well as declaratory and injunctive relief. The district court construed Balsam's complaint as raising claims under the Federal Tort Claims Act ("FTCA") as well as non-FTCA claims. As to the FTCA claims, the district court concluded that it lacked jurisdiction because Balsam had not exhausted his administrative remedies and dismissed these claims without prejudice. As to the non-FTCA claims, the court concluded that Balsam failed to state a claim and dismissed those claims with prejudice.

On appeal, Balsam challenges only the district court's dismissal of his non-FTCA claims for failure to state a claim. After careful review of the briefs and the record, we conclude that the district court lacked subject matter jurisdiction over these claims. We thus vacate the district court's order dismissing them with

22-10662                Opinion of the Court                3

prejudice and remand with instructions to the court to dismiss them without prejudice.

**I.**

In the 1990s, Balsam and another man founded what they represented to be a viatical investment company, meaning a company that bought "life insurance policies at a discounted rate from terminally ill policy holders." *United States v. Balsam*, 315 F. App'x 114, 117 (11th Cir. 2008) (unpublished). The company promised investors that their money would be used to purchase viatical insurance benefits. But instead of using investors' funds to buy insurance benefits, Balsam and others involved in the scheme kept the money for themselves. Investors lost over $100 million in the fraudulent scheme.

In 2000, a federal grand jury charged Balsam and others with crimes arising out of this scheme. The indictment included a forfeiture count, which stated that the government would seek to forfeit all property "involved" in the charged offenses as well as "all property traceable to such property." Crim. Doc. 1006 at 44.[1] The indictment alleged that the property sought to be forfeited "includ[ed], but [was] not limited to," assets that were listed in the indictment. *Id.* The listed assets included:

- A parcel of land in Boca Raton, Florida;

---

[1] "Civ. Doc." refers to the district court's docket entries in 9:20-cv-80958-DMM. "Crim Doc." refers to the district court's docket entries in 9:99-cr-08125-DMM.

- A 1997 Mercedes Benz S600;

- A 1998 Aston Martin;

- A 1999 Lotus Espirit 13;

- A 1999 Bentley; and

- 100 shares of stock in Asset Equity, a company located in Canada.

In 2001, a jury convicted Balsam on all counts for which he was charged. On the same day the jury returned its verdict, the government and Balsam signed an agreement entitled "Consent to Forfeiture." In the Consent to Forfeiture, Balsam agreed to the forfeiture of the six assets listed above (collectively, the "Forfeiture Property").

After the parties signed the Consent to Forfeiture, the district court entered a preliminary order of forfeiture. This order stated that the Forfeiture Property would be forfeited to, and seized by, the United States. It directed that upon adjudication of all third-party interests, the court would enter a final order of forfeiture.

While the criminal case was ongoing, the company Balsam had founded was in bankruptcy proceedings. The district court in the criminal case directed the bankruptcy trustee to serve as a third-party receiver to maintain, preserve, and sell forfeited assets.

The district court sentenced Balsam to 360 months' imprisonment and ordered him to pay $50 million in restitution. The

court's judgment memorializing his sentence also directed him to forfeit the Forfeiture Property.

After sentencing, the district court entered a restitution order. It directed that restitution would be made to the victims through a distribution of funds generated by the liquidation of forfeited assets, including the Forfeiture Property. The funds would be distributed to the victims after "all ancillary adjudication regarding the assets ordered forfeited is completed and the assets have been sold," Balsam "has been sentenced," and a final judgment has been "entered as to the assets." Crim. Doc. 2049 at 7–8. The order also noted that for purposes of his restitution obligation, Balsam would "receive credit for payments made to victims from the Bankruptcy Case." *Id.* at 8.

Balsam appealed his convictions and sentence. We affirmed his convictions but vacated his sentence based on *United States v. Booker*, 543 U.S. 220 (2005), and remanded for resentencing. *See United States v. Arroya*, 213 F. App'x 815, 817 (11th Cir. 2007) (unpublished).

On remand, the district court again sentenced Balsam to 360 months' imprisonment and ordered him to pay $50 million in restitution. In addition to setting forth the custodial sentence and the restitution amount, the court's final judgment directed that Balsam would make restitution payments while incarcerated. These payments would be equal to either half of the wages that Balsam earned in his prison job or, if he was not working, $25 per quarter. And upon his release from prison, Balsam would pay 10% of his

monthly gross earnings as restitution. According to the judgment, the government could "us[e] other assets or income of [Balsam] to satisfy the restitution obligations." Crim. Doc. 2524 at 3. As to forfeiture, the judgment incorporated by reference the preliminary order of forfeiture.

Balsam again appealed his sentence. We affirmed. *See Balsam*, 315 F. App'x at 123. After we issued our decision, the district court entered a final order of forfeiture. The order extinguished Balsam's rights in the Forfeiture Property except for the Asset Equity stock. The final order of forfeiture directed the receiver to use the funds generated from the sale of forfeited assets to pay restitution to the victims.

In June 2009, after the receiver made a final disbursement to the victims, the district court entered an order discharging the receiver. It directed that any unclaimed funds remaining after the receiver's final disbursement would be deposited into the clerk of court's restitution fund and authorized the clerk to disburse the funds among the victims. The district court credited Zane with a "total of $36,241,150.25 in restitution funds" that had been disbursed to the victims. Crim. Doc. 2635 at 3. The court directed that any "future restitution funds collected . . . from the criminal defendants or any other entities" would be deposited into the clerk's restitution fund and used to pay additional restitution to the victims. *Id.* at 2. Over the next decade, approximately $500,000 was collected and distributed to the victims. The district court

determined in December 2019 that Balsam had satisfied approximately $36.8 million of his $50 million restitution obligation.

In June 2020, Balsam, proceeding *pro se*, filed a civil suit against the United States. He alleged that in his criminal case the government had agreed to limit the property subject to forfeiture to specific, identified assets—that is, the Forfeiture Property. He asserted that the government breached this agreement by seizing additional assets that belonged to him—real property in Canada, two bank accounts, a cashier's check, the amount owed under a loan agreement, and a 1996 Porsche 911—with a total value of more than $7 million. He asserted that the United States had no authority or right to seize this property. Balsam sought declarations that: the forfeiture of any assets other than the Forfeiture Property was a violation of the parties' agreement, the government could use only the Forfeiture Property to satisfy his restitution obligation, and he owed no further restitution. He also demanded that the United States return his improperly seized property and the court award him more than $7 million in damages.

The government moved to dismiss the action. It argued, among other things, that any claims under the FTCA should be dismissed without prejudice because Balsam had not exhausted administrative remedies. In its motion, the government noted that Balsam also appeared to seek an order directing the government to return assets to him. It acknowledged that Federal Rule of Criminal Procedure 41(g) established procedures that allowed a person aggrieved by a deprivation of property to seek the property's return.

But the government asserted that Balsam pled insufficient facts to demonstrate that the court had subject matter jurisdiction under Rule 41(g).

Balsam opposed the government's motion to dismiss. He nevertheless acknowledged that his claims under the FTCA were premature because he had not yet exhausted administrative remedies and thus they should be dismissed without prejudice. Balsam also conceded that he was not proceeding or seeking relief under Rule 41(g).

A magistrate judge issued a report and recommendation on the government's motion to dismiss. The magistrate judge concluded that the court lacked subject matter jurisdiction over Balsam's FTCA claims. As to Balsam's non-FTCA claims seeking the return of seized property, the magistrate judge concluded that the court had subject matter jurisdiction because these claims arose under the Declaratory Judgment Act, 28 U.S.C. § 2201. Nonetheless, the magistrate judge recommended that the district court dismiss these claims because Balsam had failed to state a claim for relief. According to the recommendation, Balsam's restitution obligation could "be satisfied from any assets belonging to . . . [him], even assets not forfeited to the United States." Civ. Doc. 60 at 9.

The district court adopted the magistrate judge's recommendation. As to the FTCA claims, the district court agreed that it lacked subject matter jurisdiction because Balsam had not exhausted administrative remedies and dismissed these claims without prejudice. As to the non-FTCA claims, the court agreed that

Balsam failed to state a claim for relief and dismissed the claims with prejudice.

This is Balsam's appeal. On appeal, we appointed Balsam counsel.

## II.

Balsam argues on appeal that the district court erred in dismissing his non-FTCA claims.[2] He says that the allegations in his operative complaint were sufficient to state a claim for relief.

Before we can address this issue, we must be sure that the district court had subject matter jurisdiction. *See Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1264 (11th Cir. 2021) ("[A]n appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." (internal quotation marks omitted)).

"Sovereign immunity generally protects the United States and its agencies against suit." *Smith v. United States*, 14 F.4th 1228, 1230–31 (11th Cir. 2021). It bars suits against the United States that are filed without its consent. *Id.* at 1231. The United States may waive its sovereign immunity, but "the waiver . . . must be unequivocally expressed." *Id.* (internal quotation marks omitted). "If there is no specific waiver of sovereign immunity as to a particular claim filed against the [United States], the court lacks subject

---

[2] Balsam does not challenge on appeal the district court's determination that it lacked subject matter jurisdiction over his FTCA claims. We thus limit our discussion to the non-FTCA claims.

matter jurisdiction[.]" *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015).

The district court concluded that it had subject matter jurisdiction over Balsam's non-FTCA claims because they arose under the Declaratory Judgment Act. But it never directly addressed sovereign immunity. We do so here.

The Declaratory Judgment Act generally authorizes district courts to issue declaratory judgments as a remedy. *See* 28 U.S.C. § 2201(a). But this statute "does not, of itself, confer jurisdiction upon federal courts." *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1350 (11th Cir. 2018) (internal quotation marks omitted). As our predecessor court explained, the Declaratory Judgment Act does not waive sovereign immunity because it "does not grant any consent of the United States to be sued." *Anderson v. United States*, 229 F.2d 675, 677 (5th Cir. 1956).[3]

We conclude that the United States did not waive its sovereign immunity as to the non-FTCA claims.[4] In arguing that the

_____

[3] This Court adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[4] We note that the United States has waived its sovereign immunity for claims brought under the Tucker Act, which created a cause of action "against the United States for money damages" when a claim is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *E. Enters. v.*

22-10662               Opinion of the Court                11

government waived its sovereign immunity, Balsam points to Federal Rule of Criminal Procedure 41(g). This rule permits a "person aggrieved . . . by [a] deprivation of property" to "move for the property's return." Fed. R. Crim. P. 41(g). When a property owner invokes Rule 41(g) after the close of criminal proceedings, a "court treats the motion for return of property as a civil action in equity." *United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005). To obtain relief under Rule 41(g), a party must show that "he had a possessory interest in the property seized by the government" and that he has "clean hands." *Id.* Rule 41(g) also requires that a party must seek his property's return "in the district where the property was seized." *Id.*

It is true that Rule 41(g) contemplates a civil action in equity seeking the return of property seized by the United States. But in the district court Balsam expressly disavowed that he was proceeding under Rule 41(g). On appeal, he asks us to treat his non-FTCA claims as having been brought under Rule 41(g) and to ignore his disavowal because when he made the statement, he was proceeding *pro se*. Although we "liberally construe[]" a *pro se* litigant's

---

*Apfel*, 524 U.S. 498, 520 (1998) (quoting 28 U.S.C. § 1491(a)(1)). But for claims seeking damages over $10,000 under the Tucker Act, the Court of Federal Claims has "exclusive jurisdiction." *Id.*; *see* 28 U.S.C. § 1346(a)(2). Because Balsam sought over $7 million in money damages here, exclusive jurisdiction over any Tucker Act claim would rest solely in the Court of Federal Claims. *See Friedman v. United States*, 391 F.3d 1313, 1315 (11th Cir. 2004) (affirming district court's dismissal of Tucker Act claim for lack of jurisdiction). As a result, the Tucker Act's waiver of sovereign immunity does not help Balsam.

pleadings, we "may not serve as *de facto* counsel for a party or re-write a pleading." *United States v. Cordero*, 7 F.4th 1058, 1068 n.11 (11th Cir. 2021) (internal quotation marks omitted). Given Balsam's unequivocal statement that he was not proceeding under Rule 41(g), we cannot rely on this rule to conclude that we have subject matter jurisdiction.

But even setting aside Balsam's express disavowal, we cannot say that Balsam was proceeding under Rule 41(g) here. Rule 41(g) plainly states that a party may seek relief only "in the district where the property was seized." Fed. R. Crim. P. 41(g). Balsam did not allege in his complaint that any of the seizures that he was challenging occurred in the Southern District of Florida, where he filed this lawsuit. Instead, he admitted that at least some of the property he seeks to recover was seized outside Florida. Without additional allegations connecting the property to the Southern District of Florida, we conclude that the district court could not exercise subject matter jurisdiction to grant equitable relief pursuant to Rule 41(g).

Balsam also suggests that the district court had subject matter jurisdiction to review his non-FTCA claims because he was proceeding under 18 U.S.C. § 3664. We disagree.

Section 3664 sets procedures for the issuance and enforcement of restitution orders in criminal cases. *See* 18 U.S.C. § 3664. The statute directs that when a district court imposes restitution as part of a defendant's criminal sentence, the court shall issue a restitution order establishing the schedule for the defendant's

restitution payments. *Id.* § 3664(f)(2). Section 3664 also states that a defendant who is required to pay restitution must "notify the court and the Attorney General of any material change in [his] economic circumstances that might affect [his] ability to pay restitution." *Id.* § 3664(k). Upon receipt of such notice, a "court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." *Id.*

We acknowledge that § 3664 would have allowed Balsam to file a motion in his criminal case seeking an adjustment to his restitution payment schedule—which requires him to pay either half his income from his prison job or $25 per quarter while incarcerated—based on a change in his economic circumstances. But we do not see how this statute establishes that the district court had jurisdiction over Balsam's civil suit. Even liberally construing his pleadings in this case, we see nothing suggesting that Balsam was seeking to alter his restitution payment schedule based on a change in his economic circumstances. Instead, his pleadings show that he sought a declaration that he owed nothing more in restitution because he believed that the government had agreed that the only assets that could be used to satisfy the restitution award were the Forfeiture Property. Because there is no indication that Balsam sought to reduce his restitution payments because of a change in his economic circumstances, we cannot agree that his claims arose under § 3664(k).

For Balsam's non-FTCA claims, we conclude that the United States is entitled to sovereign immunity. Because the United States has not waived its sovereign immunity for these claims, the district court lacked jurisdiction and should have dismissed the claims without prejudice. *See Dupree v. Owens*, 92 F.4th 999, 1008 (11th Cir. 2024). Accordingly, we vacate the district court's order dismissing these claims with prejudice and remand with instructions to dismiss them without prejudice.

**VACATED and REMANDED.**